N. E. BURKITT MOTOR COMPANY et al., Appellees, v. CITY OF STUART et al., Appellants.

**MUNICIPAL CORPORATIONS:** Powers—Disposal of By-products. The power of a city to enter into an enforcible contract to utilize by sale whatever waste steam may result from the operation of its own electric light and water plant is necessarily implied from and fairly incident to its legal right to establish and operate such plants.

*Appeal from Guthrie District Court.*—LORIN N. HAYS, Judge.

MARCH 9, 1921.

ACTION in equity by injunction to restrain the city of Stuart, Iowa, from disconnecting pipes from its steam plant, thereby cutting off heat from buildings owned by appellees, which buildings were being heated by the city under contract with appellees. Decree entered, making the temporary injunction permanent for the time covered by the contracts. Defendants appeal.—*Affirmed.*

*Batschelet & Vincent,* for appellants.

*Carl P. Knox,* for appellees.

DE GRAFF, J.—The city of Stuart, Iowa, is a city of the second class and owns and operates its municipal electric light and water plants. The city also installed a system in connection therewith which condenses the exhaust steam from its light plant, permitting the re-use of same at high temperature in the boilers of its plant. Through the use of the exhaust steam, the

city is enabled to heat its city hall, jail, firemen's hall, and public library building.

In 1918, upon the advice of the deputy auditor of state in charge of cities and towns, the city council decided to make further use of the exhaust steam which was being wasted, and thereby secure pecuniary benefits to the city; and, in pursuance thereof, entered into written contracts with appellees to heat certain buildings owned by the latter for a period of three years, in consideration of a stipulated price. The city had previously purchased a vacuum pump, valves, and accessories, and installed same in connection with its municipal lighting and water plant. The appellees purchased and installed the necessary equipment in their buildings to receive the benefits of the contracts, and did receive the benefits until August 4, 1919, when the city council by resolution ordered the city electrician "to detach the heating plant pipes and discontinue private heating service." To restrain this contemplated action, the petition in this case was filed and a temporary injunction issued. Upon trial on the merits, the injunction was made permanent.

At the very threshold, we are confronted with the question: Was the defendant city maintaining and operating a heating plant, within the purview of Section 720 of the Code and acts amendatory thereto? The trial court made answer to this question in the negative.

A heating plant cannot be operated by a city until it is legally established. In the instant case, the so-called plant was simply an adjunct to legally established electric light and power plants, and the subject-matter of the contracts with appellees was a by-product that otherwise would be a waste.

The city has the right to heat its own municipal buildings, and in so doing requires no franchise from the electorate. The approving vote of the electors is not a condition precedent to establish such means. The powers of a municipal corporation are such as are granted in express words, or necessarily or fairly implied in or incident to powers expressly granted or indispensable to the declared objects and purposes of the corporation. This principle, stated by Justice Dillon in *Clark v. City of Des Moines*, 19 Iowa 199, 209, has been followed and cited many times by this court.

No violation of this rule of law appears from the record before us. The sale of the waste steam is not by means of an established central heating system. No citizen of Stuart has the right to demand the use of such steam in connection with his residence or business. The evidence shows a sufficiency of waste steam at the time to heat the buildings in question. It may be noted, also, that, in the event that there was not sufficient waste steam furnished by the existing power plants to sufficiently heat the buildings named in the contracts, no recovery could be had for an alleged breach.

The power of a city to dispose of its by-products resulting from the legal operation of its municipal agencies is necessarily implied from and incidental to powers expressly granted. A city may sell and contract for the sale of the ashes resulting from the operation of its steam plant, or the dirt, coal, or rock taken from its streets in the improvement thereof, or manure from its barns, or the grease and refuse from its incinerating plant. True, the city may not engage in an independent business. In such case, the doubt is resolved against the delegation of such power, and no power by implication arises, unless it is indispensable to the powers expressly given.

To authorize a city to maintain street lamps would not be authorization to buy an oil well. To authorize the transportation of pupils to and from a public school would not be authority to maintain and operate a city railway. To authorize the building of a city hall is not authority to build a public assembly hall, when the primary purpose is to serve private enterprise, and only incidentally to serve a public purpose. *Brooks v. Incorporated Town of Brooklyn*, 146 Iowa 136; *Mauldin v. City Council of Greenville*, 33 S. C. 1 (11 S. E. 434); *Spaulding v. Inhabitants of Peabody*, 153 Mass. 129.

The sale of a by-product by the city bears no relation to taxation, except to lessen the burden thereof by securing revenue from sources that otherwise would constitute waste.

The conclusion reached makes it unnecessary to pass on other points argued on appeal. Suffice it to state, the points are not well taken. The decree and judgment entered are correct, and are—*Affirmed*.

EVANS, C. J., WEAVER and PRESTON, JJ., concur.