STATE ex rel. WHITMORE v. BARBOGLIO et al.

No. 4104.   Decided May 3, 1924.   (226 Pac. 904.)

1. BANKS AND BANKING—STATE LEGISLATION OR JUDICIAL ACTION CANNOT IMPAIR POWERS OF NATIONAL BANK. State by legislation or judicial action cannot impair powers conferred upon a national bank as governmental agencies.

2. COURTS—THAT MATTERS PERTAINING TO NATIONAL BANK INVOLVED NOT SUFFICIENT TO OUST STATE COURT OF JURISDICTION. That matters pertaining to a national bank are involved is not sufficient to oust state court of jurisdiction.[1]

3. COURTS—STATE COURT NOT WITHOUT JURISDICTION TO TRY TITLE TO OFFICE OF NATIONAL BANK DIRECTOR. State court has jurisdiction of proceeding to try title to office of director of national bank.

4. BANKS AND BANKING—QUO WARRANTO NOT AVAILABLE TO TRY TITLE TO OFFICE IN NATIONAL BANK. Information in nature of quo warranto in name of state will not lie to try title to an office in a corporation not created by authority of the state, in view of Comp. Laws 1917, § 7354, and will not lie to try title to office of director of national bank.

5. ACTION—"CUMULATIVE REMEDY" DEFINED. A "cumulative remedy is one created by statute in addition to one which still remains in force, and when a statute gives a new remedy, and contains no negative, express or implied, of old remedy, new

[1] Harkness v. Guthrie, 27 Utah, 248, 75 Pac. 624, 107 Am. St. Rep. 664, 1 Ann. Cas. 129.

one is cumulative, and party may elect between the two (quoting Words and Phrases, Second Series, "Cumulative Remedy").

Proceeding on information in the nature of a quo warranto, by the State, on the relation of L. E. Whitmore, against Joseph Barboglio and others.

ACTION DISMISSED.

*Harvey H. Cluff*, Atty. Gen., *Marshall Macmillan & Crow*, of Salt Lake City, and *M. P. Braffet*, of Price, for plaintiff.

*L. A. McGee*, of Price, and *Dey, Hoppaugh & Mark*, of Salt Lake City, for defendants.

THURMAN, J.

This is a proceeding on information in the nature of a quo warranto to determine title to the office of director of the First National Bank of Price, Utah, a corporation organized and existing under the laws of the United States. It is made to appear from the complaint that plaintiff and two others were duly elected to the office of directors at an election held in pursuance of the articles and by-laws of the corporation, but that the judges of election unlawfully rejected legal votes cast for plaintiff and said other persons, thereby causing it to appear that defendants had received a majority of the votes cast. Defendants were thereupon declared elected, and it is alleged they now hold and exercise the functions of said office without authority of law and exclude plaintiff and said other persons therefrom. Plaintiff prays that defendants be ousted; that plaintiff and said other persons be inducted into said office; and that each of the defendants be fined in accordance with the statute in a sum not exceeding $5,000. The particular details constituting the grievance complained of by plaintiff are not before us in this proceeding.

Defendants move to dismiss the action for want of jurisdiction. They also demur to the complaint for the same reason. This is the only question before the court.

It is contended by defendants: First, that the court is without jurisdiction because it is attempted by this action to interfere with officers of a federal corporation and subject an instrumentality of the government to the supervision, control, and visitorial powers of the state of Utah, through this court, and to determine the regularity of the election of the officers of said bank; that the suit can only be brought in the name of the United States, and the question presented tested only in the federal court; second, that defendants are not charged with usurping or unlawfully holding an office in a corporation created by authority of the state of Utah, but that the offices involved are created by the authority of the United States.

The questions will be considered in the order above stated. Under the first ground stated it is contended by defendants that this court has no jurisdiction to regulate or control the internal affairs of a national bank. Their contention seems to be that in no form of action can a state court exercise jurisdiction concerning the internal affairs of a national bank, except that it may proceed in quo warranto to inquire whether or not the bank is violating a state law which is not in conflict with the federal law. As suggested in their brief, the Supreme Court of the United States has consistently held that state legislation or judicial action in conflict with the powers conferred upon a national bank is void. The cases cited in support of this proposition are in point: *Easton* v. *State of Iowa*, 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452; *Davis* v. *Elmira Sav. Bank*, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700; *First National Bank of San Jose* v. *California*, 262 U. S. 366, 43 Sup. Ct. 602, 67 L. Ed. 1030; *Van Reed* v. *People's National Bank*, 198 U. S. 554, 25 Sup. Ct. 775, 49 L. Ed. 1161, 3 Ann. Cas. 1154.

The proposition is uncontrovertible that neither state legislation nor state courts can interfere with the powers conferred upon national banks as instruments of the government, nor with such powers as are necessary to carry on the business for which they were organized under the laws of the United States. The cases last cited are all cases in

which there was an interference with the powers conferred, and for that reason the proceedings were held to be void. The vital question here, however, under this subhead of the argument, is, What feature of the Currency Act—what power conferred upon the National Bank of Price—is being interfered with, or in what manner do the proceedings instituted here impair the efficiency or utility of the bank as an instrumentality of the government?

The National Currency Act has been greatly modified since the early cases to which defendants have referred, so much so that the instances are now comparatively few in which the federal courts have exclusive jurisdiction. The district courts have original jurisdiction, as stated in volume 4, Federal Statutes, annotated, p. 1054, § 24, par. 16 (U. S. Comp. St. § 991):

"Of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank; and of all suits brought by any banking association established in the district, for which the court is held, under the provisions of title 'National Banks,' Revised Statutes, to enjoin the comptroller of the currency, or any receiver acting under his direction, as provided by said title. And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located."

This statute superseded a statute of 1888 relating to the same subject. The two statutes are quoted and compared in _Herrmann_ v. _Edwards_, 238 U. S. 107, 35 Sup. Ct. 839, 59 L. Ed. 1224. In that case a stockholder of a national bank brought suit against directors of the bank alleging that defendants had large interests in another national bank and had devised a scheme by which the first bank would purchase the second bank for a sum utterly disproportionate to its value, thus despoiling the first bank and its stockholders, and wrongfully enriching the second bank and its stockholders to the extent of the inordinate price which was paid. The prayer was for an accounting and for a decree in favor of complainant and his costockholders for whose benefit the action

was brought. The action was instituted in the federal District Court, and was dismissed for want of jurisdiction. There was no diversity of citizenship and no federal question involved. On appeal to the Supreme Court of the United States the judgment was affirmed. The opinion cites the case of *Whittemore* v. *Amoskeag Bank,* 134 U. S. 527, 10 Sup. Ct. 592, 33 L. Ed. 1002, which was a suit in a circuit court of the United States by a stockholder for himself and others against the bank and its directors for alleged maladministration. The prayer was that the directors be decreed to pay back to the bank for the benefit of the stockholders the amount of money lost by their misconduct. The circuit court dismissed the bill for noncompliance with equity rule 94. On appeal to the Supreme Court the decision was reversed as to the grounds upon which it was decided and the case remanded, with directions to dismiss the bill for want of jurisdiction as a federal court. The court, in *Herrmann* v. *Edwards,* supra, in commenting on the decision in the *Wittemore Case,* at page 113 of 238 U. S. (35 Sup. Ct. 840), says:

"This ruling during the many years which have elapsed has never been questioned and the fundamental principle upon which it rested has been applied in various aspects."

In the same connection and in support of its views the court cites *Petri* v. *Commercial Bank,* 142 U. S. 644, 12 Sup. Ct. 325, 35 L. Ed. 1144; *Ex parte Jones,* 164 U. S. 691, 17 Sup. Ct. 222, 41 L. Ed. 601; *Continental Nat. Bank* v. *Buford,* 191 U. S. 119, 24 Sup. Ct. 54, 48 L. Ed. 119; *Yates* v. *Jones Nat. Bank,* 206 U. S. 158, 27 Sup. Ct. 638, 51 L. Ed. 1002; *Thomas* v. *Taylor,* 224 U. S. 73, 32 Sup. Ct. 403, 58 L. Ed. 673.

Respecting the purpose, nature, and status of a national bank plaintiff's counsel in the case at bar, quote the following pertinent excerpt from 7 C. J. at page 758:

"A national bank is a corporation, the powers of which are defined and limited by the acts of Congress authorizing the creation of such institutions. Although created to aid the government and regarded as agencies or instruments of the national government for the purpose of providing the national currency secured by a pledge of United States bonds, national banks are private institu-

tions, and do not constitute part of any branch of the national government; National banks are deemed citizens of the states in which they are respectively located and a national bank located in one state is a foreign corporation with respect to another state."

They also cite the following cases wherein state courts have entertained jurisdiction in matters in which national banks, or their officers, were involved. In *re Braden's Estate*, 165 Pa. 184, 30 Atl. 746; *Winter* v. *Baldwin*, 89 Ala. 483, 7 South. 734; *McCormick* v. *Smith*, 23 Idaho, 487, 130 Pac. 999; *Grout* v. *First National Bank*, 48 Colo. 557, 111 Pac. 556, 21 Ann. Cas. 418; *Woodworth* v. *Old Second Nat. Bank*, 154 Mich. 459, 117 N. W. 893, 118 N. W. 581; *Patek* v. *Patek*, 166 Mich. 443, 131 N. W. 1103; *Farmers' Nat. Bank* v. *McCoy*, 42 Okl. 420, 141 Pac. 791, Ann. Cas. 1916D, 1243; *State* v. *First Nat. Bank*, 297 Mo. 397, 249 S. W. 619; *First Nat. Bank* v. *Commonwealth*, 143 Ky. 816, 137 S. W. 518, 34 L. R. A. (N. S.) 54, Ann. Cas. 1912D, 378; *Harkness* v. *Guthrie*, 27 Utah, 248, 75 Pac. 624, 107 Am. St. Rep. 664, 1 Ann. Cas. 129.

The last case cited was a decision by this court in which it was held that a stockholder of a national bank had the right of inspection of the books of the corporation for a proper purpose. The jurisdiction of the state court was challenged because of U. S. Comp. St. 1901, p. 3517, which reads:

"No association shall be subject to any visitorial powers other than such as are authorized by this title or are vested in the courts of justice."

Speaking to this point, the state Supreme Court, at page 250 of 27 Utah (75 Pac. 624), said:

"Visitorial powers and the stockholders' right of inspection are not one and the same thing. In 7 Am. & Eng. Ency. Pl. and Pr. 855, visitation of corporations is correctly defined, and its purposes aptly stated as follows. 'By "visitation of corporations" is meant the act of examining into its affairs. The person authorized to make such examination is called the visitor. The purpose of visitation is to supervise, direct, and control the management of the corporation.'"

The judgment authorizing inspection was affirmed by the state Supreme Court, and on appeal was affirmed by the Supreme Court of the United States. 199 U. S. 148, 26 Sup. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433.

It is unnecessary to review at length the above cases cited

by plaintiff. It is sufficient to say they demonstrate conclusively that the mere fact that matters pertaining to a national bank are involved is not sufficient to oust the state court of jurisdiction. As appears from the federal statute, hereinbefore quoted, national banks are citizens of the state in which they are established, except in the cases expressly mentioned in the statute. Being citizens of the state, and their powers and duties as instruments of the government not being in any manner impaired or called in question, it is difficult to see that any federal question is involved, or that there is any attempted infringement of power belonging to the federal government.

Both parties litigant, in the instant case, refer to a recent decision of the United States Supreme Court. *First Nat. Bank* in *St. Louis* v. *State of Missouri* (decided January 28, 1924) 263 U. S. 640, 44 Sup. Ct. 213, 68 L. Ed. ——. The case was one on information in the nature of quo warranto arising in the state of Missouri. A statute of that state prohibited banks generally from establishing branch banks. The First National Bank in St. Louis, Mo., opened a branch bank in the same city, and proposed to establish other branches. The Attorney General of the state instituted in the state Supreme Court quo warranto to restrain the bank from establishing and maintaining branch banks in violation of the state law. Judgment was entered in favor of the state, from which judgment the bank appealed to the Supreme Court of the United States, in which court the judgment of the state court was affirmed. In the course of the opinion written by Mr. Justice Sutherland the court says:

"National banks are brought into existence under federal legislation, are instrumentalities of the federal government, and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a state in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States. *National Bank* v. *Commonwealth*, 9 Wall. 353, 362; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283. These two cases are cited and followed in the later case of *McClellan* v. *Chipman*, 164 U. S. 347, 357, and the principle which they establish is said

to contain a rule and an exception, 'the rule being the operation of general state laws upon the dealings and contracts of national banks, the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States * * * or impair their efficiency to discharge the duties imposed upon them by the law of the United States.' See, also, *White* v. *Dowley*, 94 U. S. 527, 533."

In that case the question was, Did the Missouri state law conflict with the laws of the United States? In the instant case the question is, does a proceeding in the state court to try title to the office of director of a national bank conflict with the laws of the United States or in any manner contravene its policy in respect to national banks? The bank is a citizen of the state of Utah and the contesting litigants are also citizens of the state. It must be, and certainly is, a matter of indifference to the federal government whether plaintiff or defendants were elected to the offices of director. In either case, the business of the bank and the purpose for which it was organized will proceed without impairment, hindrance, or interruption. We find nothing in the National Currency Act excluding jurisdiction of the state courts in cases of this nature; nor do we find anything excluding such jurisdiction when we consider the cases in which the government has exclusive jurisdiction. These are 3 enumerated in section 1021, Barnes' Federal Code 1919 (U. S. Comp. St. 1918, § 1233). The section reads:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states:

"(1)   Of all crimes and offenses cognizable under the authority of the United States. '

"(2)   Of all suits for penalties and forfeitures incurred under the laws of the United States.

"(3)   Of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it, and to claimants the right and remedies under the workmen's compensation law of any state.

"(4)   Of all seizures under the laws of the United States, on land or on waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize.

"(5) Of all cases arising under the patent-right, or copyright laws of the United States.

"(6) Of all matters and proceedings in bankruptcy.

"(7) Of all controversies of a civil nature, where a state is a party, except between a state and its citizens, or between a state and citizens of other states, or aliens."

The court is of opinion that in a proper proceeding, before a competent state tribunal, the court would have jurisdiction to try the merits of the controversy set forth in plaintiff's complaint and that defendants' motion to dismiss on the first grounds stated should be denied.

The second ground upon which defendants challenge the jurisdiction of the court presents a more serious question. It is contended that under the statutes of this state an action on information in the nature of quo warranto will not lie to try title to an office in a corporation not created by the authority of this state. In this contention they rely upon Comp. Laws Utah 1917, § 7354, which so far as material here, reads:

"A civil action may be brought in the name of the state:

"1. Against a person who usurps, intrudes into, or unlawfully holds or exercises a public office, civil or military, or a franchise, within this state, *or an office in a corporation created by the authority of this state.*"

We have italicized for convenience the language upon which defendants specially rely. They contend that the statute quoted is in harmony with the general law, and that the authorities are unanimous to the effect that the right to challenge by quo warranto the usurpation of an office lies only with the sovereign whose franchise is invaded. Numerous authorities are cited, among which are the following: *Wallace* v. *Anderson,* 5 Wheat. 291, 5 L. Ed. 91; *Territory of Nebraska ex rel. Wakley* v. *Lockwood,* 3 Wall. 236, 18 L. Ed. 47; *De Turk* v. *Commonwealth,* 129 Pa. 151, 18 Atl. 757, 5 L. R. A. 853, 15 Am. St. Rep. 705; Michie on Banks and Banking, vol. 3, § 251; and *State* v. *Curtis,* 35 Conn. 374, 95 Am. Dec. 263. We cite these cases without comment, for the reason that in our opinion the statute is controlling, unless, as contended by plaintiff, the statute is merely cumulative of a remedy existing at common law. An

Quo Warranto

excerpt is quoted by plaintiff from 32 Cyc. at page 1417, which reads as follows:

"In the absence of a constitutional prohibition, the Legislature has power to provide other remedies and thereby supersede that by quo warranto, and an intention so to do, if clearly manifested, will be given effect, and the courts will recognize the statutory remedy as exclusive. Unless, however, the contrary intention clearly appears, the statutory remedy will be considered cumulative."

Other authorities are cited by plaintiff in support of the right to try title to a corporate office by a quo warranto proceeding, but as to this there is no substantial controversy; hence it is unnecessary to refer to the authorities cited.

Whether or not the Utah statute is merely cumulative of a remedy existing at common law is a question of controlling importance in the instant case. If the statute is merely cumulative of another remedy, plaintiff had a right to choose between the two. Whether that would be of any avail in the instant case we need not pause to inquire. It the statute a cumulative remedy? Can that be said to be a cumulative remedy which gives the party no choice, but on the contrary either expressly or by necessary implication excludes him therefrom?

"A cumulative remedy is one created by statute in addition to one which still remains in force, and when a statute gives a new remedy, *and contains no negative*, express or implied, of the old remedy, the new one provided is cumulative, and the party may elect between the two." (Italics supplied.) 1 Words and Phrases, Second Edition, p. 1177.

The statute in question here contains a negative which excludes the instant case from its provisions. It expressly enumerates the cases in which a quo warranto proceeding may be instituted, and by implication excludes all others. *Expressio unius, etc.* Besides this, Comp. Laws Utah 1917, § 5839, provides:

"The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the revised statutes. The revised statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice."

In view of the statutes quoted, and their plain and unequivocal meaning, we are irresistibly led to the conclusion that a quo warranto proceeding in a state court here will not lie to try title to an office in a corporation not created by the authority of this state. Therefore this court is without jurisdiction to try and determine the cause as presented in this proceeding.

It follows that defendants' motion should be granted, and the action dismissed at plaintiff's cost.

It is so ordered.

GIDEON, FRICK, and CHERRY, JJ., concur.

WEBER, C. J., did not participate.