[No. 18349. Department Two. November 24, 1924.]

# L. W. BEASLEY et al., Respondents, v. ASSETS CONSERVATION COMPANY et al., Appellants.[1]

WATERS AND WATER COURSES (89)—IRRIGATION DISTRICTS—PROCEEDINGS TO ESTABLISH—POWERS OF OFFICERS—CONTRACT FOR WATER SUPPLY. A contract to furnish water to an irrigation district for one year is not *ultra vires*, under Rem. Comp. Stat., § 6416 *et seq.*, the ultimate purpose of such a district being to procure water for irrigating the lands within the district.

SAME (89) — POWERS OF OFFICERS — CONTRACT — ACCEPTANCE OF BENEFITS—ESTOPPEL. A contract to furnish water to an irrigation district for one year is not void because entered into by the board of directors without a vote of the people in the district, where the district had previously authorized the issuance of bonds to purchase the system, which contemplated that the same be used until the system could be purchased.

ESTOPPEL (53)—ACCEPTANCE OF BENEFITS—CONTRACTS. Owners in an irrigation district who knowingly received the benefits from a contract to supply the district with water, cannot question the authority of the directors to make the contract.

WATERS AND WATER COURSES (89)—CONTRACT FOR WATER SUPPLY—VALIDITY—INTEREST OF OFFICERS IN CONTRACT. Rem. Comp. Stat., § 6455, making it a misdemeanor, and ground for forfeiture of the office, for an irrigation director to be interested in the contracts of the district, does not apply to a contract for a water supply in which the directors were interested only as all others in the district were interested in procuring water.

SAME (91)— PROCEEDINGS —WARRANTS—VALIDITY—PERFORMANCE OF CONTRACT—ESTOPPEL. It cannot be said that a contract to furnish

[1]Reported in 230 Pac. 411.

water to an irrigation district was not substantially performed, because of insufficiency of the supply, where there was a bona fide attempt to furnish all available water, and the directors of the district accepted the performance and directed the issuance of warrants to pay therefor.

SAME (91)—WARRANTS—ASSESSMENT OF BENEFITS—VALIDITY. Under Rem. Comp. Stat., § 6499, giving the directors of a dissolved irrigation district power to levy assessments, if an assessment levied to pay a debt is illegal, a new assessment should be made.

PEMBERTON, J., dissents.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered March 28, 1923, in favor of the plaintiffs, in an action to enjoin the payment of warrants of an irrigation district, tried to the court. Reversed.

*Burcham & Blair* and *Graves, Kizer & Graves,* for appellants.

*N. W. Washington, William M. Clapp,* and *C. G. Jeffers,* for respondents.

BRIDGES, J.—By this action the plaintiffs sought to enjoin the payment of, and to have declared invalid, about $10,000 worth of warrants issued by an irrigation district. From a judgment granting the relief prayed, this appeal is taken.

In Grant county, this state, there is a body of water called Brook lake, and a few miles below it are some 6,000 acres of irrigable lands. The Stafford Irrigation Company bought these lands and obtained the right to take the water from this lake for irrigation purposes. It then proceeded to sell the land, each deed containing a provision to the effect that the purchaser should be entitled to water for irrigation purposes at a designated price. Meanwhile it constructed and installed certain pumps, siphons, flumes and other works for the purpose of conveying the water from the lake to the land. In 1915 it had sold all of its lands, and about

400 acres thereof had been put into orchards. The remainder of the lands were then unimproved. It then became insolvent and ceased to operate the irrigation system. The owners of the land at once became active in an effort to obtain water. Irrigation must be had or the orchards would die. The irrigation company owed about. $6,000, and there was an understanding between it and the landowners that the latter might purchase the irrigation system at a price sufficient to pay the pre-existing debt. With this in view, the owners of the lands organized the Grant Orchards Reclamation District, which had within its boundaries all of the 6,000 acres. It undertook to raise the $6,000 necessary to purchase the irrigation system, but was unable so to do. It then approached several bond buyers with a view of obtaining money by means of which water could be obtained for the summer of 1916 and subsequent years, probably by issuing and selling bonds. The bonding companies did not like the situation and refused to purchase the bonds.

Inasmuch as the summer of 1916 was rapidly approaching, and no other means could be found whereby water could be furnished during that season to the cultivated lands, in June the Stafford company entered into an agreement with the Assets Conservation Company whereby the former turned over to the latter its irrigating system, which at that time needed very considerable repairs to be of any use. The Assets Company agreed that, if it could enter into a sufficient number of contracts with the landowners to justify it in so doing, it would repair the system and furnish water for that season. It was at that time contemplated that such a situation might arise as that the Assets Company would itself purchase the irrigating system and either furnish water to the lands or sell the system

to the district, and an option to purchase was given. The landowners, particularly those who had orchards, were influential in having this contract made. The Assets Company, having obtained agreements from some of the landowners, repaired the system and furnished water to the orchards during the summer of 1916. It did not, however, exercise its option to purchase.

 Such was the situation when the summer of 1917 was approaching. In April of that year, the Assets Company and the reclamation district, through its board of directors, entered into the contract which is attacked in this suit. Its preamble recites the facts heretofore mentioned, and that all parties were working together with a view of making arrangements for a permanent supply of water, and that the district had reduced its boundaries to be about 2,000 acres, it having been previously determined that the available water was wholly insufficient to irrigate the 6,000 acres, and that it had voted its bonds to be used in the purchase of the irrigating system in question, either from the Assets Company or the original company. After the preamble, it is stated that the Assets Company agrees to furnish water to the lands within the reduced district for the year 1917, in quantities sufficient for the irrigation thereof, not to exceed two acre feet per acre for the season, such water to be furnished through the Stafford irrigation system, and the district agrees to pay the Assets Company therefor at the rate of $6 per acre for all the lands contained in the reduced district, and to issue its warrants therefor and to provide ways and means whereby money should be raised to pay them. Under this contract, the Assets Company furnished water during the summer of 1917 to the orchard lands, and in consideration thereof received from the district,

acting through its board of directors, warrants as provided in the contract.

The contract and the warrants issued under it are attacked on various grounds. The respondents are owners of land within the district and began this suit on behalf of themselves and all others similarly situated. The Assets Company and the Spokane & Eastern Trust Company are closely allied and are the holders of the warrants. It is conceded that the irrigation statutes as found in Remington's 1915 Code are controlling.

(1) Respondents contend that the contract under which the warrants were issued is *ultra vires* the reclamation district, and for that reason void; or, if not *ultra vires,* it is void because the board of directors had no authority to make it or issue the warrants without the consent of the people of the district given at an election held for that purpose.

We are satisfied that the contract is not *ultra vires;* that is, beyond the power of the district. Under our statutes (Rem. Comp. Stat., § 6416 *et seq.*) [P. C. § 6054], the ultimate purpose of an irrigation district is to procure water for the purpose of irrigating the lands within its boundaries. Generally this water is furnished by a distributing system owned by the district itself, but it is not necessarily confined to procuring water in that way. Its powers are not only such as are granted in express words, but also those necessarily or fairly implied in or incident thereto or indispensable to its declared objects and purposes. *In re Wenatchee Reclamation District,* 91 Wash. 60, 157 Pac. 38; *In re Auxiliary Eastern Canal Irrigation District,* 24 Ariz. 163, 207 Pac. 614; *State ex rel. Hill v. Bridges,* 87 Wash. 260, 151 Pac. 490, *Burkitt Motor Co. v. City of Stuart,* 190 Iowa 1354, 181 N. W. 762; 28 Cyc. 263

*et seq.* Almost any effort to procure water for irrigation purposes would be within the expressed or implied powers of an irrigation district. The sole purpose of the contract involved here was to procure irrigating water. The district was undertaking to procure a system of its own. During the interim it was securing the water in any way it could. To hold that an irrigation district has no power to make this contract would be to deprive it of the power of self-preservation.

We do not think it necessary to determine whether the board of directors, without a vote of the people of the district, had the power to enter into this contract. Our view is that that authority had, by necessary inference, been previously conferred by the people. It must be remembered that the only way of irrigating the district was by means of the Stafford system, and because its owner had ceased to operate it, and because it was absolutely necessary that water be procured, the owners of land organized the district for the purpose of purchasing the existing system, and it had voted bonds in furtherance of that plan. But it must necessarily take time to negotiate the bonds and to consummate the purchase, and in the meanwhile water must be furnished, otherwise the orchards will die, and with the orchards destroyed, the one great incentive and need of the district to obtain water would be destroyed. It must have been within the intent of the people, when they voted bonds to purchase this irrigating system, that the board of directors would be authorized to do whatever was necessary pending the purchase to keep the district in such condition as to make the system available when it was obtained. In other words, the organization of the district for the purpose of purchasing the existing distributing system, and its subsequent voting of bonds to pay for the

system, contemplated that the improved lands should meanwhile be kept in such condition by the board of directors as that the purchase when made would be of value.

Nor is the district or the respondents in an easy position to claim that the board was without such power. The contract was actually made, the cultivated lands actually received the benefits flowing from it. These very respondents knew of the contract and accepted its benefits and they ought not now be permitted to repudiate it. For these reasons we think the directors were authorized to make the contract in question and to issue the warrants therein provided for, and, in addition, the respondents are not in position to complain.

(2)   The respondents claim that the contract is void because some of the directors who executed it on behalf of the district were interested. Section 6455, Rem. Comp. Stat. [P. C. § 6000], being a part of the irrigation code, provides that

"No director or any other officer named in this chapter shall in any manner be interested directly or indirectly in any contract awarded or to be awarded by the board or the profits to be derived therefrom; and for any violation of this provision such officers shall be deemed guilty of a misdemeanor and such conviction shall work a forfeiture of office."

The testimony shows that some of the directors were owners of orchards within the district, and it is contended that because thereof, they were directly interested in the making of the contract. Section 6418, Rem. Comp. Stat. [P. C. § 6056], provides that only those who own land within the district are electors, and § 6419, Rem. Comp. Stat. [P. C. § 6057], provides that members of the board of directors shall be electors of the district. Manifestly, § 6455, *supra,* providing that

no director shall in any manner be interested in any contract he may make, cannot refer to such interest as he may have because of being the owner of land in the district. Otherwise it would be impossible to have a board of directors, or at any rate, one which would be authorized to make any kind of a contract. The prohibiting statute must be construed to refer to an interest peculiar to the director and different from that of other landowners in the district. These directors were interested in procuring water in exactly the same way that all other landowners were. The mere fact that they may have owned orchards which needed water at once, and others had lands which for the present did not need irrigating, does not make their interest different from the others: while their interest for the time being may have been greater than that of some other landowners, it was not different. To adopt the contention of the respondents in this regard would be to substantially destroy the purpose of the statutes with reference to irrigation districts.

(3) Respondents further contend that the warrants should be cancelled because the Assets Company failed to perform its contract to furnish water. It is conceded that it furnished only sufficient to irrigate the improved land, and that it was then unable to furnish sufficient to irrigate the whole district. But, if it did this, no one was damaged and no one can complain. Other lands did not need water. But it is claimed that there was not sufficient water furnished to the lands that needed irrigation, nor the amount contracted for. All that the Assets Company was required to do was to substantially comply with its contract, and, under all the circumstances, we cannot say that it did not do so. Just how much water was furnished to the orchards is not shown, but that there was a *bona fide* at-

tempt to furnish an ample supply cannot be doubted. Beside this, the board of directors having, as we have held, authority to make this contract, it also had authority to determine whether it had been substantially performed, and by its action in issuing warrants in accordance with the terms of the contract, the district is estopped to now say that the contract was not performed. It may be conceded that the board would not have authority to arbitrarily accept a supply of water as a fulfillment when all persons must know that the contract had not been complied with. But where, as here, there is a dispute as to whether there was a substantial performance, the acceptance by the board of the water and the payment therefor in accordance with the terms of the contract will be conclusive upon the district. Under all the circumstances, it would seem entirely unjust and unfair to hold that the contract had not been substantially performed.

(4) It is next contended by respondents that the assessments heretofore levied to pay these warrants were unlawful because no notice had been given as provided by the statute, and because they were not levied according to benefits. The trial court, having held that the contract itself was void, did not reach the question of the legality of the assessment. It appears that the appellants, as owners of the warrants, have, by cross-complaint, asked that, if the assessment be held void, the court require a new and valid assessment to be made for the purpose of paying the warrants. The contract itself provides that the board shall take any and all proper legal steps to raise money for the purpose of paying the warrants, and when the case is returned to the lower court it should determine, either upon the evidence now in or upon additional testimony, the legality of the assessment, and if it should deter-

mine that it is illegal, then it should require the board to make a lawful assessment. The fact, as shown by the testimony, that the district has been dissolved cannot alter the situation. It cannot avoid paying its debts by dissolving. Besides, § 6499, Rem. Comp. Stat. [P. C. § 6032], provides that, when an irrigation district is dissolved, its board of directors shall have power to levy assessments to pay debts.

The whole situation convinces us that the real purposes of the contract have been fulfilled and that the district and the lands within it have received value, and that fairness requires that the appellants should receive their pay as evidenced by their warrants. The judgment is reversed, and the cause remanded for proceedings as herein indicated.

MAIN, C. J., FULLERTON, and MITCHELL, JJ., concur.
PEMBERTON, J., dissents.