**BRIDGEPORT IRR. DIST. v. UNITED STATES.***

No. 8714.

Circuit Court of Appeals, Eighth Circuit.
May 5, 1930.

Rehearing Denied June 23, 1930.

William Ritchie, Jr., and Ralph O. Canaday, both of Omaha, Neb., for appellant.

William J. Burke, Dist. Counsel, Bureau of Reclamation, of Mitchell, Neb., and Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., George A. Keyser, and Edson Smith, Asst. U. S. Attys., all of Omaha, Neb., on the brief), for the United States.

Before BOOTH and GARDNER, Circuit Judges, and SANBORN, District Judge.

GARDNER, Circuit Judge.

This is an action brought by the United States, plaintiff below, against the Bridgeport irrigation district, a public corporation, defendant below, to recover amounts claimed to be due on a written contract. The contract, which is made a part of the petition, is for the sale and delivery of water for irrigation purposes. The defendant, as its name indicates, is an irrigation district organized and existing under the laws of Nebraska. It is alleged in the petition that the Secretary of the Interior of the United States had surveyed and located an irrigation project partly in Wyoming and partly in Nebraska, known as the North Platte project. That by virtue of the Act of Congress of February 21, 1911 (43 USCA §§ 523–525), the Secretary of the Interior was empowered and authorized to dispose of surplus storage rights in reservoirs constructed by the United States; that the board of directors of the Bridgeport irrigation district, acting for and on behalf of the electors and landowners of the district, by virtue of the power vested in them under section 3466, Revised Statutes of Nebraska 1913, negotiated with the plaintiff for a contract to perfect its water supply; and that on the 14th of June, 1915, the contract in question was executed. That the defendant agreed to pay the sum of $77,620 for the right to the flow of water agreed to be delivered by the plaintiff, the payments to be made annually and deferred payments to bear interest at 10 per cent. per annum from the time when they became due until paid. The performance of the contract on behalf of the plaintiff is alleged, and that the defendant made the annual payments pursuant to the

*Rehearing denied June 14, 1930.

terms of the contract for five years, but that the installments subsequently accruing have not been paid, and judgment is demanded for the amount of the installments with interest.

The answer in effect admits that the defendant in form executed the contract, but alleges that the contract had not at any time been submitted by defendant's board of directors or any person or persons whomsoever, to the legal voters of the district for their approval at any general or special election, and that none of the provisions of chapter 205 of the Laws of Nebraska for the year 1915 had been complied with, and that the contract had never been authorized, ratified, or approved by the defendant or by the legal voters of the defendant district, and that it was beyond the power and authority of the defendant and its board of directors to execute such a contract without having submitted the same to the legal voters of the district. It is alleged that the board of directors of the district had no power or authority, under the statutes of Nebraska, to contract for 10 per cent. per annum interest on the obligations of the district. It is further alleged that the payments made on the contract by the defendant were illegal and without authority of law. The answer contains some further allegations, which, in the view we take of the issues, are not material. A general demurrer to this answer was sustained, and the defendant having elected to stand thereon, judgment was entered for the amount due on the contract, including interest, and from this judgment the defendant has appealed.

If, under the laws of Nebraska, the contract as executed was authorized, then the answer stated no defense and plaintiff was entitled to judgment. It was therefore proper to determine the matter on demurrer.

It is alleged in the petition, and urged here, that power to execute this contract was vested in the board of directors of the district by virtue of the statutes of Nebraska. Sections 3465 and 3466, Revised Statutes of Nebraska 1913, read as follows: Section 3465: "The board shall have the power and it shall be its duty to manage and conduct the business affairs of the district, make and execute all necessary contracts, employ such agents, officers and employees as may be required and prescribe their duties, establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purposes of this article." Section 3466: "The board shall also have the right to ac-

quire, either by purchase or condemnation, all lands and waters and other property necessary for the construction, use, maintenance and repair and improvement of any canal, canals, power plants of any kind or nature, and lands for reservoirs for the storage of water and all necessary appurtenances. The board shall also have the right to acquire by purchase or condemnation any irrigation works, power plant, ditches, canals or reservoirs already constructed for the use of said district. In case of purchase, the bonds of the district hereinafter provided for may be used at their par value in payment. The board may also construct the necessary dams, reservoirs and works for the collection of water for the district and do any and every lawful act necessary to be done that sufficient water may be furnished to' each landowner in the district for irrigation purposes."

The purpose of the organization of the district was to procure water for the irrigation of lands. It is specifically provided in section 3466 that, "The board shall also have the right to acquire by purchase" all necessary waters "and do any and every lawful act necessary to be done that sufficient water may be furnished to each landowner in the district for irrigation purposes." The Supreme Court of Nebraska in State v. Gering Irrigation District, 109 Neb. 642, 192 N. W. 212, 214, referring to the purpose of the organization of an irrigation district says: "An irrigation district is a public corporation. Its funds are derived from the taxation of all land within the district. The very purpose of its organization is to furnish water upon fair and equitable terms and conditions to each and every landowner within the district." The contract here involved is for a supplemental water supply to be furnished to landowners of the district. To say that the district was without authority to contract on the subject forming the sole purpose of its existence would, as said by the Supreme Court of Washington in Beasley v. Assets Conservation Company, 131 Wash. 439, 230 P. 411, 413, "be to deprive it of the power of self-preservation." In State v. Gering Irrigation District, supra, the Supreme Court of Nebraska in considering section 3465 further says: "The statute, both by express direction and by implication, provides that all powers reasonably necessary to carry into effect the object and purpose of the organization are possessed by the board of directors."

■ It would seem to be unnecessary to pursue the subject further, nor to cite further authorities, because counsel in reply brief say that: "No contention is made by the ap-

pellant, either in its pleadings or argument, that such a contract could not be executed by the district. The question is whether the officers of the district can bind the district on a contract of this nature when the contract calls for payment over a period of ten years, without first submitting it to the electors at an election called for that purpose and obtaining their approval."

It is the contention of the defendant that the power of the district to execute such a contract was limited by chapter 205 of the Laws of Nebraska 1915, which was passed with an emergency clause so that it became effective March 18, 1915, prior to the date of the execution of the contract in question. This act provides as follows:

"An Act to provide for the purchase of a water supply for irrigation districts and to provide for a method of payment of such water supply, and to provide for the rescission of contracts for purchase of water supply, payment of which was made in bonds, and for the surrender and cancellation of bonds given in payment of water supply for irrigation districts, and to declare an emergency.

"Be it Enacted by the People of the State of Nebraska:

"Section 1. *Irrigation District—Contract for Water.*—That the Board of Directors of any irrigation district organized under the laws of this state may enter into contracts for a supply of water for the irrigation of the lands within said irrigation districts with any person, firm, association, corporation of the United States of America; the source of supply of said water may be either within or without the boundaries of the State of Nebraska, and said water supply may be either the entire supply of water for said district or to supplement an appropriation already made by said district.

"Sec. 2. *Same—Assessment for.*—If the contract hereinbefore mentioned provides for payment of the entire purchase price of said water supply within one year after the making of said contract the Board of Directors of such irrigation district shall at the time of entering into said contract pass a resolution that a levy shall be made sufficient to raise such sum as is necessary to pay said purchase price and the board of directors shall thereafter, and at the same time the levy of other taxes for said district is made, levy a tax against the taxable property of the district sufficient to raise and pay such sum.

"Sec. 3. *Same—Submit to Vote—When.* —If said contract provides for payments to be made extending for a period of more than one year from the date of making said contract the board of directors of such irrigation district shall submit said contract to the legal voters of said district at any general election, or at a special election called therefor for the approval or disapproval of said contract. If a special election is called for such purpose the notice of election, conduct of said election and canvass of votes shall so far as practicable be the same as elections held for the purpose of voting upon the issuance of bonds. The ballots at said election shall have printed thereon 'For approval of contract for water supply' and 'Against approval of contract for water supply.' Those voting for approval of said contract shall mark their ballots after the clause beginning 'For approval'; those voting against approval of said contract shall mark their ballots after the clause beginning 'Against approval.' The notice of said election need not give the entire contract but shall be sufficient if it shall state in a general way the substance of said proposed contract. If a majority of the voters that vote on said proposition vote for approval of said contract the Board of Directors shall enter into said contract and shall thereafter, at the time the other taxes of the district are levied, levy a tax on the taxable property of the district sufficient to pay the amount due on said contract and to become due on said contract before the next annual levy in said district.

"Sec. 4. *Bonds.*—If any irrigation district shall have heretofore, or hereafter, purchased a water supply and issued bonds in payment of the same, or shall have purchased an irrigation system which system included a contract for water supply and issued bonds in payment of the same the directors of the district may arrange for the surrender and rescission of such contract for water supply upon surrender of, and cancellation of bonds in an amount equal to the bonds issued in payment for such water supply, and if said water supply was included in the purchase price of an irrigation system the board of directors may arrange for the surrender and rescission of said contract for such water supply on the surrender and cancellation of bonds in an amount equal to the part of the purchase price that was represented by the value of such contract for water supply, such amount to be determined by the directors of said irrigation district. And upon the surrender of such contract and cancellation of bonds as hereinbefore provided the board of directors of such irrigation district may enter into a new contract for water supply as hereinbefore provided.

"Sec. 5. *Saving Clause.*—This act shall not limit the rights which any irrigation district has under the existing laws to purchase a water supply and shall be cumulative thereto.

"Sec. 6. *Emergency.*—Whereas, an emergency exists this act shall take effect on and after its passage and approval.

"Approved, March 18, 1915."

This act was either amendatory of sections 3465 and 3466, supra, or it was an independent act complete in itself. If it be held to be amendatory of these sections 3465 and 3466, then it was unconstitutional because it violated section 14, article 3 of the Constitution of Nebraska, which provides that no law shall be amended unless the new act contains the section or sections as amended and the section or sections so amended shall be repealed. Farmers' Mut. Ins. Co. of Nebraska v. Moore, 48 Neb. 870. 67 N. W. 876. Where a statute is susceptible of two constructions, one of which will uphold the validity of the act, while the other will render it unconstitutional, the one which will sustain the constitutionality of the act must be adopted. St. Louis Southwestern Ry. Co. v. Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265; The Abby Dodge v. U. S., 223 U. S. 166, 32 S. Ct. 310, 56 L. Ed. 390; U. S. v. Delaware, etc., Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836. The act must therefore be construed as an independent act complete in itself. New York Trust Co. v. Farmers' Irrigation District (C. C. A.) 280 F. 785. Sections 3465 and 3466 were therefore neither amended nor repealed by chapter 205, Laws of Nebraska 1915. An examination of this act convinces that it was not the intention of the Legislature to qualify, limit or define the rights of an irrigation district and its board of directors, but, rather, to add to such rights and authority. Section 5 of the act, which is designated as a "Saving Clause," provides that: "This act shall not limit the rights which any irrigation district has under the existing laws to purchase a water supply and shall be cumulative thereto." This provision leaves but little for construction. If, under the existing statutes, the district had the authority to execute this contract, which was in effect a contract for the purchase of a water supply, then that authority was not taken away, limited, modified, nor affected by this act.

We must assume that the word "cumulative" was advisedly used in this act. Its meaning is well known and is defined as meaning that which augments by addition. See Merchants' Coal Co. v. Fairmont Coal Co. (C. C. A.) 160 F. 769; Mannington v. Hocking Valley Ry. Co. (C. C.) 183 F. 133; State v. Barboglio, 63 Utah, 432, 226 P. 904. "Cumulative as defined by the legal lexicographers, means 'additional,' that which is super-added to another thing of the same character and not substituted for it." Abbott's, Black's and Anderson's Law Dictionaries. Construing this term in a statute, the Supreme Court of Texas in State v. Laredo Ice Co., 96 Tex. 461, 73 S. W. 951, 952, says: "The term 'cumulative' indicates a harmonious coexistence and co-operation, rather than a consolidation of two things into one. An amendment to a statute is not 'cumulative' because it repeals and takes the place of the part of the law that it amends, thereby becoming a part of the law amended." This thought is further fortified by an examination of the title of the act. It is entitled, "An Act to provide for the purchase of a water supply for irrigation districts and to provide for a method of payment of such water supply, and to provide for the rescission of contracts for purchase of water supply, payment of which was made in bonds, and for the surrender and cancellation of bonds given in payment of water supply for irrigation districts, and to declare an emergency." This act was manifestly to authorize the board of directors of an irrigation district to contract for a water supply under special circumstances not present in the instant case. It is suggested in brief of counsel that the occasion and necessity for the enactment of chapter 205, Laws of 1915 is to be found in the case of New York Trust Company v. Farmers' Irrigation Distirct (C. C. A.) 280 F. 785. Be that as it may, the act in question authorized the board of directors of an irrigation district to contract for a supply of water with the United States when a water supply contract is in force, payment for which was made in bonds of the district and it is desired to provide for the rescission of the water supply contract in force, to cancel and surrender the bonds given in payment for the water supply, and to make a new contract. It follows that the right and authority of the irrigation district conferred by sections 3465 and 3466 was not limited, abridged, or otherwise affected by the enactment of chapter 205, Laws of 1915, and the court properly held that the contract was binding upon the defendant district.

It is therefore not necessary to consider the effect of chapter 69, Laws 1915, section 3 of which, it is urged, is in the nature of a curative act, nor is it necessary to consider

the question of estoppel so ably presented by counsel.

■ It remains only to consider the validity of the provision of the contract for the payment of interest at a rate of 10 per cent. after the installments shall become due. This rate of interest is permitted by the Nebraska statutes, and it is to be noted that if the installments are paid when they become due, no interest charge is made. Having held that the district had the authority to make the contract, and the contract containing provision for the payment of the consideration in stated installments without interest, it is clear that if the payments are made at the time specified in the contract, no interest charges will be paid. It is only in the event of failure to make payment of the installments at the times stipulated that the interest becomes payable. It is in the nature of damages for failure to pay in accordance with the terms of the contract. There is nothing in the provisions of the Nebraska statute that have been called to our attention, rendering this provision nugatory.

The judgment of the lower court is therefore affirmed.