[No. 12425.   Department One.   October 26, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Clallam County et al., Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, Respondent*.[1]

COUNTIES—INDEBTEDNESS—LIMITATION — SUBMISSION TO VOTERS— NECESSITY—STATUTES—CONSTRUCTION. Under Const., art. 8, § 6, providing that no county shall become indebted to an amount exceeding one and one-half per centum of its taxable property, without the assent of three-fifths of the voters voting at an election for that purpose, and that with such assent the total indebtedness shall not exceed five per cent, the submission to the voters of a proposition is presumed to be for the incurring of a debt beyond the first limitation, unless it clearly appears from the proposition or surrounding circumstances that it was the intention to include the first limitation; hence where the county commissioners submitted a proposition to issue bonds in the sum of $300,000, for roads and bridges, which was authorized by three-fifths of the voters, the commissioners thereafter had authority by proper resolution to issue bonds in the sum of $65,000 for a courthouse, without submitting the same to the electors, where such $65,000 indebtedness with all other indebtedness, excluding the $300,000, did not exceed one and one-half per centum of the taxable property.

SAME. Rem. & Bal. Code, § 5085, giving the board of county commissioners, without the assent of the voters, the power to create a county indebtedness, which "together with existing indebtedness" shall not exceed one and one-half per centum of the taxable property, means the "existing indebtedness" incurred without the assent of the voters; so that propositions to exceed that limit may be submitted to the approval of the voters before the lower limitation has been reached; and after additional indebtedness has been authorized by the voters, the commissioners may, without assent of the voters, incur indebtedness within the one and one-half per centum limitation of § 5085.

Application filed in the supreme court October 13, 1914, for a writ of mandamus to compel the state auditor to accept and pay for certain bonds sold to the state.   Granted.

[1]Reported in 143 Pac. 876.

*J. E. Cochran, F. T. Trumbull,* and *Frank L. Plummer,* for relators.

*The Attorney General* and *R. E. Campbell, Assistant,* for respondent.

Gose, J.—This is an application for a peremptory writ of mandate, requiring the respondent, as state auditor, to accept and pay for certain bonds issued by Clallam county and sold to the state.

The petition of the relators discloses the following facts: The board of county commissioners of Clallam county, by a proper resolution, determined to issue bonds of the county in the sum of $65,000, for the purpose of erecting a courthouse. In pursuance of the resolution, the county auditor duly advertised for bids for the proposed bonds. The state submitted the highest and best bid therefor. The commissioners accepted its bid, issued and tendered the bonds to the state, and demanded a warrant for the amount of the bid. The respondent refused to issue and deliver the warrant. Prior to the adoption of the resolution by the board of commissioners, a proposition was submitted to the voters of Clallam county as follows:

"Shall Clallam county through its board of county commissioners issue three hundred thousand ($300,000) dollars in bonds to be used in building and improving roads and bridges. „Bonds, Yes.  Bonds, No."

The proposition received the assent of three-fifths of the electors of the county, and the bonds were issued. These bonds are in excess of one and one-half per centum of the taxable property in the county. By excluding these bonds, the proposed issue of bonds, together with all other existing indebtedness of the county, will be less than one and one-half per centum of the taxable property in the county. The respondent demurred to the petition on the ground that it does not state facts sufficient to constitute a cause of action.

Section 6, art. 8, of the constitution provides that no

county shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, and that with such assent, the total indebtedness of the county shall not exceed five per centum of the value of the taxable property therein.

The question to be determined is whether, upon the facts stated, the proposed issue of bonds is legal. This court has consistently held that this section of the constitution creates two separate classes or limitations, the first being a limitation on the power of the board of county commissioners to incur indebtedness independently of the assent of the voters, in excess of one and one-half per cent of the taxable property in the county, and the second a limitation upon the power of the county, with the assent of the voters, to exceed the five per cent limitation. *State ex rel. Barton v. Hopkins*, 14 Wash. 59, 44 Pac. 134, 550; *Hazeltine v. Blake*, 26 Wash. 231, 66 Pac. 394; *State ex rel. Strahorn v. Blake*, 26 Wash. 237, 66 Pac. 396; *State ex rel. Olympia v. Holmes*, 81 Wash. 403, 142 Pac. 1148. The power of the board of county commissioners to incur indebtedness up to one and one-half per cent, exclusive of indebtedness authorized by the people, is subject to this qualification: If it shall clearly appear from the proposition submitted to the electors, or from all the attending circumstances, that it was the intention to include the first limitation in the indebtedness authorized by the people, then such indebtedness shall be so included; otherwise, it shall be excluded. This view is made clear in *Hazeltine v. Blake, supra*, where the court said:

"No assent of the voters is required by a municipality to enable it to incur a debt within the first limitation. This it may do without such assent, and it may cause such indebtedness to be evidenced by warrants drawn upon its treasurer, or by bonds issued pursuant to the requirements of the statute. The assent of the voters is required only in cases where

it is sought to incur a debt within the second limitation. Whenever, therefore, a municipality asks and obtains the assent of its voters to the incurring of a debt, the presumption arises from the very act itself that it is the intent to incur a debt within that limitation within which a debt cannot be incurred without such assent; and, although this presumption is not conclusive in every instance, it must be so where it is not overcome either by an express declaration to the contrary or such a state of facts as will leave the question equally free from doubt."

Tested by the rule there announced, it cannot be said in the case at bar that it was the intention of the voters to have the bonded indebtedness cover the first limitation.

The *Attorney General* argues, however, that Rem. & Bal. Code, § 5085 (P. C. 421 § 1), only authorizes the board of county commissioners to contract indebtedness where the existing indebtedness, whether authorized by the commissioners or by a vote of the people, or both, is below the first constitutional limitation. We cannot acquiesce in this view. Section 5085 has reference only to the power of the board of county commissioners to contract indebtedness independently of the action of the voters. The words "together with existing indebtedness" mean indebtedness incurred by the commissioners without assent of the voters. We think that a careful reading of § 5085 in connection with § 5086 (P. C. 421 § 3) shows that it was the intention of the legislature to authorize the board of county commissioners to incur indebtedness equal to the first limitation without the assent of the voters, exclusive of indebtedness authorized by the latter. While § 5085 of the statute is not referred to in any of the cases cited, it will not be presumed that the court was unmindful of its existence. Measured by the rule announced in *Hazeltine v. Blake*, we think the proposed bonds are legal.

The writ will issue.

CROW, C. J., PARKER, and MORRIS, JJ., concur.