[No. 12862.  *En Banc.*  September 13, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Homer M. Hill et al., Appellant,* v. ROBERT BRIDGES *et al., as Commissioners of the Port of Seattle, Respondents.*[1]

MUNICIPAL CORPORATIONS—PORT COMMISSIONS—POWERS—DOCKS—"COLD STORAGE PLANTS." The establishment of an ice manufacturing and general cold storage plant for the icing and preparation of fish for shipment, as a necessary incident to its warehousing and transmission, is within the power of the Seattle port commission, under 3 Rem. & Bal. Code, § 8165-4, authorizing the commission "to construct and operate any and all systems of wharves, docks . . . and other harbor improvements, rail and water transfer and terminal facilities . . ."

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 22, 1915, in favor of the defendants, dismissing an action for an injunction, tried to the court.  Affirmed.

*Robert A. Devers* and *Milo A. Root,* for appellant.

*France & Helsell,* for respondents.

CHADWICK, J.—This action is brought to restrain the respondents, as commissioners of the port of Seattle, a municipal corporation, from letting contracts, expending money, or incurring indebtedness in constructing, equipping, or operating a fish and cold storage plant and ice manufacturing plant at one of the ocean docks erected by it on the east waterway, in the city of Seattle.

[1]Reported in 151 Pac. 490.

The fishing industry has come to be one of the important items of commerce at the port of Seattle. Ocean going schooners and steam vessels go from that port into the northern waters and return to Seattle with their cargoes, where the fish are prepared for storage or shipment. The fish are either iced and shipped immediately, or they are prepared by a process necessary to preserve their form and color, then subjected to a freezing process and kept in cold storage to be shipped and marketed as the market demands.

The port commission intends to and will, unless restrained by the decree of this court, establish an ice manufacturing plant and a general cold storage, so that patrons of the dock may have the privilege of either icing their fish for shipment or storing their cargoes for future shipment. It is not proposed to make any specific charge for either ice or cold storage, but the cost to the commission will be absorbed in a general wharfage charge. From a decree denying an injunction, this appeal is taken.

Many assignments of error are made, but we think the questions may all be made to depend upon a construction of the statute under which the commission was created, and under which it is operating.

It is contended that grants of power to municipalities are to be strictly construed, and if there be a doubt, or the exercise of the asserted power would lead to absurd consequences, a construction that limits, rather than one which expands the admitted power, will be preferred. These rules may be admitted. The apt and determinative words of the port commission act (Laws of 1911, p. 418, and Laws of 1913, p. 210, § 4) in so far as they affect the present action, are:

"And to lay out, construct, condemn, purchase, acquire, add to, maintain, conduct and operate any and all systems of sea walls, jetties, *wharves, docks*, ferries, canals, locks, tidal basins and *other harbor improvements, rail and water transfer and terminal facilities* within such port district. . . . To fix absolutely and without right of appeal or review the

rates of wharfage, dockages, *warehousing and port and ter-minal charges upon all improvements owned and operated directly by the port district itself*, and ferry charges of ferries operated by itself; . . . and to fix, subject to state regulation, rates of wharfage, dockage, *warehousing* and all necessary port and terminal charges upon all *docks, wharves, warehouses, quays, or piers owned by said port district but operated under lease from it*, . . ." (Italics ours.) 3 Rem. & Bal. Code, § 8165-4.

The legislature has the undoubted power to create the respondent municipality; and it would seem that it would require no argument to sustain the holding that any power necessary to effectuate the general purpose of the grant is incident to the enumerated powers. That fresh fish and frozen fish are items of commerce and will require warehousing, and in time preparation for shipment and reshipment by rail or water, is a matter of common knowledge. It is equally evident that they cannot be warehoused, stored or reshipped without resort to artificial methods. To charge this product with the cost of icing or freezing is, in our judgment, a necessary incident to its transmission, and is well within the grant of power to provide "wharves, rail and water transfer, and terminal facilities." In other words, the power is commensurate with the necessity to so care for a product as to keep it in condition for transfer and shipment. Nor does it follow that the commission may maintain a sawmill and box factory or a cooperage plant because the product must be shipped in boxes or barrels, or operate a plant for the manufacture of tackle, boats, and ship's goods. These things are all incident to the fishing business, whereas, the things now complained of are incident to the warehousing and keeping of the product that is to be shipped while in the warehouse. The commission is threatening to do no more than any up-to-date operator of a private dock, or one who had his own docking facilities, would do. Counsel say:

"The regular fishermen and fish companies have their own plants and operate the sharp freezing and cold storage plant

process as a part of their business. These and the ice companies have spent hundreds of thousands of dollars in Seattle building and equipping plants of this character."

Appellants' argument in this regard, when summed up, is that the legislature never intended to put the commission in competition with those who manufacture ice or maintain cold storage warehouses. To carry the contention to its logical conclusion, we would have to hold that the commission could not even build docks and wharves because others are already engaged in the business. Whenever the public assumes to operate a public utility—since *Munn v. Illinois*, 94 U. S. 113, a warehouse has been held to be such utility—it necessarily comes in competition with private ownership. We know of no cases, nor do we think any can be found, that would deny an exercise of the right of sovereignty, either directly or by delegated authority, because it would be destructive of some private enterprise.

Counsel maintain that the building of a cold storage plant and the manufacture of ice is not within the "comprehensive scheme" submitted to the voters. Having held that the power is within the terms and the implications of the law, we shall not pursue this contention. Then, too, it will be time enough to inquire into the right of the commission to sell ice as a market commodity when the case is properly before us.

We find no error. The decree of the lower court is affirmed.

MORRIS, C. J., MOUNT, MAIN, HOLCOMB, FULLERTON, and ELLIS, JJ., concur.