[No. 18123.  *En Banc.*  September 14, 1923.]

# C. T. DONWORTH, *Respondent,* v. THE PORT OF SEATTLE et al., *Appellants.*[1]

MUNICIPAL CORPORATIONS (523)—PORT DISTRICTS—POWERS—IS-
SUANCE OF BONDS—SUBMISSION TO VOTERS—STATUTES—CONSTRUCTION.
Under Rem. Comp. Stat., § 9692, empowering port districts to con-
tract indebtedness and issue bonds not exceeding three per cent of
the assessed value of the taxable property in the district, provided
that no such indebtedness shall be incurred exceeding one per cent
of such assessed value without the concurrence of three-fifths of the
voters of the district, a district cannot issue bonds to the extent of
one per cent of the property, without the concurrence of three-fifths
of the voters, where it is already indebted in excess of such per cent
under a previous authority of three-fifths of the voters.

Appeal from a judgment of the superior court for
King county, Frater, J., entered June 30, 1923, in favor
of the plaintiff, in an action to enjoin the issuance of
bonds by a port district, after a hearing before the
court. Affirmed.

*Bradford & Snyder* and *John H. Powell,* for appel-
lants.

*Preston, Thorgrimson & Turner,* for respondent.

FULLERTON, J.—On March 23, 1923, the Port of Seat-
tle, by its board of port commissioners, adopted an
amendment to the original comprehensive scheme of
the port, to carry out the purposes of which required
the purchase of some additional real property. The
scheme as adopted was thereafter duly ratified by the
electorate of the district in the manner provided and
as required by statute. After the ratification of the
scheme, the board of port commissioners contracted to
purchase certain real property, and, to raise funds
with which to pay the contract price of the property,

[1]Reported in 218 Pac. 243.

proceeded to issue and sell bonds of the port district in the sum of $850,000. Prior thereto the board of port commissioners had issued bonds of the port, on a vote of the electorate of the port district, in excess of one per centum of the assessed valuation of the taxable property of the district, the indebtedness aggregating $7,845,000. The present action was instituted to enjoin the issuance of the bonds on the ground that the issue was in excess of the powers of the board of port commissioners; the issue not having been authorized by a vote of the electorate of the district. At the hearing in the court below, a permanent injunction against the issue of the bonds was entered, and the port appeals.

In the arguments of counsel a number of questions are discussed thought to affect the power of the board of port commissioners to issue bonds of the district, but since there is one which we have found decisive, we shall notice that one only.

The statute authorizing the establishment of port districts was enacted by the legislature at its session of 1911. (Laws of 1911, p. 412) [Rem. Comp. Stat., § 9688]. Section 4 of the act, defining the powers of the district, empowered it:

". . . ; to borrow money and issue bonds in an amount not exceeding two and one-half (2½) per cent of the taxable value of all property in such port district upon a three-fifths majority vote of the qualified voters in such port district voting thereon."

At the session of the legislature in 1913, this section of the statute was amended, the only change relating to the power to borrow money and issue bonds being to raise the maximum of the permissible issue from two and one-half per centum of the value of the taxable property to three per centum thereof. (Laws of 1913, p. 202).

The statute was again amended at the legislative session of 1915. (Laws of 1915, p. 148) [Rem. Comp. Stat., § 9711]. No change was made in section 4 of the act, but the legislature added thereto "a new section to be designated as § 17, as follows:"

"Section 17. The total bonded indebtedness of any port district of the first class shall not exceed two and one-fourth per centum (2¼%) of the assessed valuation of the taxable property in said district, but in no event shall the said total bonded indebtedness ever exceed the sum of five million, seven hundred fifty thousand dollars ($5,750,000.00); and whenever said limit shall have been reached, no other or further bond or bonds shall be issued, sold, delivered or hypothecated, whether or not the same may have been authorized by any law heretofore enacted and notwithstanding that the steps and proceedings relating to the authorization thereof may have been completed in accordance with the requirements of such law."

In 1917 (Laws of 1917, p. 498) § 4 of the act was again amended, the clause thereof relating to the power of the district to borrow money and issue bonds, reading as follows:

".   .   .  ; to borrow money and issue bonds in an amount not exceeding three (3) per cent of the taxable value of all property in such port district, upon a three-fifths majority vote of the qualified voters in such port district voting thereon."

This act contained no reference to the act of 1915, above quoted.

In 1921 (Laws of 1921, p. 740) [Rem. Comp. Stat., § 9692], the legislature amended § 4 of the act for the third time. This amendment made a somewhat radical change in that part of the act relating to the borrowing of money and the issuance of bonds. It empowered the port:

".   .   .  ;  to contract indebtedness or borrow money for port purposes and issue general bonds

therefor not exceeding an amount, together with the existing indebtedness of such port district of three per centum of the assessed value of the taxable property in such district, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness: *Provided,* that no such indebtedness shall be incurred exceeding one per centum of the assessed value of such taxable property in such port district as shown by the last assessment for state and county purposes without three-fifths of the voters of such port district voting on the incurring of such indebtedness assenting thereto at a general or special election held in such port district for the purposes of such submission.''

It is upon this latter provision of the statute that the board of port commissioners rest their claim of authority to issue the bonds of the port in question in the present cause. It is argued that there was here created two limitations of indebtedness, the first of which can be created without the assent of the voters of the port district, and the second of which only with the assent of such voters; that, since all of the bonds of the district heretofore issued, notwithstanding they exceed the amount permitted to be issued under the first limitation, were issued on the authority of the vote of the electors, they must be held to belong to the second limitation, leaving the first free in which bonds can be issued to the extent thereof without the assent of the voters. But we cannot think this the meaning of the legislature. Certainly the language used in the act is inappropriate to express the idea. Its more natural construction is that the legislature intended to empower the port to issue bonds to the extent of one per centum of the assessed valuation of the taxable property of the port district without the assent of the voters, when there are no such obligations in excess of that per centum, but that if bonds are to be issued in excess of that per centum, the assent of the voters of

the district must be had.   It must be remembered that
a port district is purely a creature öf the statute.   It
has such powers as the legislature has granted to it,
and such powers only.   This being true, the language
granting the powers will never be extended beyond
their plain and ordinary meaning, and, if it were even
doubtful whether the grant of power to incur indebted-
ness and issue bonds required the assent of the voters
of the district, the courts would, in the interest of the
persons who must bear the burden of paying the in-
debtedness incurred, give to it that construction.

The port cites and relies upon the case of *State ex
rel. Clallam County v. Clausen,* 82 Wash. 137, 143 Pac.
876, and the cases therein collected from this court of
similar purport.   In those cases we were referring to
the constitutional limitation of indebtedness imposed
upon municipalities, holding that there were two
classes of such limitations, one of which authorized
the municipality to incur an indebtedness without the
assent of the voters, and the other only with their as-
sent, saying that, when the indebtedness was incurred
with the assent of the voters, the presumption arose
that it was the second limitation under which the in-
debtedness was incurred.   But we cannot conceive that
these principles have application to the situation pre-
sented here.   At the time the existing bonded indebt-
edness of the port district was authorized and incurred
there was but the one method by which it could be au-
thorized and incurred, and there was but the one limi-
tation on the amount thereof.   There was no room for
the exercise of a presumption such as is sought to be
invoked here; there being nothing in the situation
which could give rise to it.

The power sought to be exercised by the board of
port commissioners, if found at all, must be found in
the language of the statute cited from the amendment

of 1921, and this, as we say, is not a sufficient authority to authorize the issuance of bonds without the assent of the voters of the port district, when such issuance will create a bonded indebtedness of the district in excess of one per centum of the taxable property therein.

The judgment of the trial court is therefore affirmed.

MAIN, C. J., PARKER, HOLCOMB, TOLMAN, BRIDGES, and MITCHELL, JJ., concur.

MACKINTOSH, J., took no part.