[No. 21646. *En Banc.* December 31, 1928.]

HERBERT S. GRIGGS, *Respondent*, v. PORT OF TACOMA
et al., *Appellants.*[1]

*Homer Bone,* for appellants.

*Herbert. S. Griggs,* for respondent.

HOLCOMB, J.—On September 10, 1928, the port commission of the port of Tacoma adopted a resolution, numbered 233, appropriating thirty-five thousand dollars of the general fund of the port of Tacoma, or so much thereof as might be necessary, to be used to dredge and improve Hylebos creek waterway by straightening, widening and deepening it.

[1]Reported in 273 Pac. 521.

Respondent, a resident and taxpayer in the port district of the port of Tacoma, conceiving himself to be injured by the proceeding, began suit against the port commission and the port district to restrain the expenditure of any of this money, setting forth the resolution.

It is alleged in the complaint that, long prior to the resolution complained of, a certain portion of the harbor and waterways of the city of Tacoma, including what was and is known as Hylebos creek, was, by due and legal action of the residents, voters and electors thereof, and in accordance with the statutes applying thereto, segregated and separately organized as and under the name of commercial waterway district No. 1 of Pierce county, Washington, for brevity therein called "Hylebos district"; that a board of commissioners was duly elected, qualified therefor, and their successors in office constitute the only official body qualified to act for and on behalf of Hylebos district with reference to the care or improvement of Hylebos district, and of any and all waterways included therein, including the making of necessary improvements by raising of necessary funds therefor by lawful asessments against the property included in the district; that on September 10, 1928, the port commission of the port of Tacoma passed the resolution complained of; that unless restrained they will carry out and perform the terms of the resolution contrary to their rights, duties and limited powers, and will assist in financing certain extensive and expensive improvements in the Hylebos district, all without any lawful authority or jurisdiction so to do, and will divert to such unlawful and improper purposes the sum of thirty-five thousand dollars of the accumulated funds of the port of Tacoma, to the great loss and damage of plaintiff and

all other owners of property in Pierce county which is not included in Hylebos district.

It is alleged that none of the proposed improvements were ever duly adopted or ratified as a part of the original "comprehensive scheme" of harbor improvements in and for the port of Tacoma, and have not since been adopted or ratified, as required by law, by the port commission of the port of Tacoma, or the qualified electors thereof.

It is further alleged that, since the organization of the Hylebos district, its board of commissioners is the only board or power authorized to make any improvements or to expend any money for any construction, superintendence or care of the improvements in the Hylebos district, or to loan or expend money for such purposes.

The complaint prayed that appellants be restrained and enjoined from diverting or using any of the credit or money of the port of Tacoma for the unauthorized purposes set forth in the resolution, or at all.

Resolution No. 233, in brief, recites the creation of the commercial waterway district No. 1 in Pierce county under the law, and that it is a waterway district duly constituted and existing; that the waterway district had theretofore caused assessments to be made against the real property in the waterway district beneficially affected by such improvement, for the purpose of dredging and improving a stream commonly known as Hylebos creek, for the purpose of creating therefrom a commercial waterway, and that the total funds derived from such assessments had been found inadequate and insufficient to complete the waterway, and that the waterway district and its commissioners had not the lawful power to make further and additional assessments against that property, for the purpose of completing the waterway, the waterway being

then in an unfinished condition and partially closed to ocean commerce.

It was then recited that a petition had been presented to the port commission of the port of Tacoma, requesting that commission to appropriate from its general fund a sum not exceeding thirty-five thousand dollars for the purpose of dredging and otherwise improving the commercial waterway known as Hylebos creek waterway.

It was then recited that Hylebos creek waterway and the waterway district were wholly within the territorial limits of the port district of the port of Tacoma and constituted a vital part of the harbor development of the harbor of Tacoma, and that the improvement of the waterway by additional dredging was deemed by the port commission to be of vital importance to the development of the harbor of Tacoma,

". . . although such waterway and the improvement thereof as herein proposed is not a part of the comprehensive scheme of harbor improvement adopted by the port commission and ratified by the voters of the port district of the port of Tacoma."

The resolution of the port commission to grant the appropriation and let contracts for dredging and improving the waterway, as requested, then followed.

To the complaint appellants demurred. Their demurrer was overruled, they declined to plead further and a decree permanently enjoining the proposed action of the port district and commission was entered.

There is nothing in the record before us showing the nature and extent of the "comprehensive scheme" of the port of Tacoma for improving the harbor, navigable waters and other waterways within the limits of the port of Tacoma, except as shown by the complaint and the resolution passed by the commissioners

of the port. By the complaint and the resolution as quoted, it affirmatively appears that the improvement of the Hylebos waterway was not a part of the comprehensive scheme of harbor improvement adopted by the port commission and ratified by the voters of the port district of the port of Tacoma.

As stated by appellants, there is only one question before us. Is the port act sufficiently broad in terms to permit the port commission to expend funds in the improvement of Hylebos waterway in the manner contemplated by the resolution?

Rem. Comp. Stat., § 9692, defining the powers of port districts, is cited and in part quoted as follows:

"To improve navigable and non-navigable waters of the United States and the state of Washington within the port district; . . . to regulate and control all such waters and all natural or artificial waterways (waterways of commercial waterway districts excepted) within the limits of such port district so far and to the full extent that this state can grant the same, and remove obstructions therefrom; . . ."

Another portion of the same section is also quoted as follows:

"To straighten, widen, deepen and otherwise improve any and all waters, watercourses, bays, lakes or streams, whether navigable or otherwise, flowing through or located within the boundaries of such port district; . . ."

It is argued that the powers enumerated in the above section are broad and sweeping and constitute ample authority to sustain the expenditure of the money appropriated by resolution No. 233, unless such grant of power is modified when read in the light of Rem. Comp. Stat., § 9694, which provides for the comprehensive scheme referred to in the complaint and in the resolution adopted.

That section in part provides:

"No expenditure for the carrying on of any harbor improvements shall be made by said port commission . . . unless and until such comprehensive scheme of harbor improvement has been so officially adopted by the port commission and ratified by a majority vote of the people, etc."

Rem. Comp. Stat., § 9695, in substance provides that when such general plans have been adopted, every improvement to be made by the commission shall be made substantially in accordance with that plan, unless a proposed change is submitted to the people and approved.

Rem. Comp. Stat., § 9696, contains a provision that the funds of such port district

". . . may be expended in the acquirement or construction of any harbor improvement embraced in such general plan adopted as in this act provided in conjunction with the county in which such port district is located, any commercial waterway district created within its boundaries, any city in such port district; the state of Washington or the United States of America, or all or any of them."

It is admitted by appellants that the port of Tacoma does not contemplate becoming joint owner of Hylebos waterway and there is no way in which the waterway might become the absolute property of the port; nor is it proposed to regulate or control the waterway. It is merely intended to improve the waterway.

It is contended that, in the light of all the provisions of the act relating to port districts, to which reference has been made, the "comprehensive scheme" need set forth and describe only those improvements which the port commission proposes to build and create by either port bonds or general taxes, which will become a part of its operating property and be devoted purely to port building purposes.

A very appealing argument is made that, unless the port commission has the power claimed, the provisions of § 9692, *supra*, become ineffective and grant power which can only be exercised when set forth in the comprehensive scheme. It is urged that such water courses might not be in existence when the comprehensive scheme of harbor improvement was adopted; and that it does not seem reasonable that an election must be called and the comprehensive scheme modified every time in order to permit the port district subsequently to do this sort of improvement or repair work.

This court has never been disposed toward an illiberal interpretation of the power of such very modern, but apparently very necessary, municipal creatures of the legislature.

We held in *State ex rel. Hill v. Bridges*, 87 Wash. 260, 151 Pac. 490, that under warehousing power granted to such a port district, where such articles of commerce as fresh fish and frozen fish would require warehousing and preparation for shipment and reshipment, it was a necessarily incidental power to construct cold storage plants for the icing and preparation of fish for shipment.

We have also held, however, that where the power is doubtful as to municipal grant, it is denied. *State ex rel. Huggins v. Bridges*, 97 Wash. 553, 166 Pac. 780, and that if the power is not expressly granted or fairly implied as incidental and essential to the powers granted, such powers must be denied.

In applying these rules, therefore, in *State ex rel. Hill v. Port of Seattle*, 104 Wash. 634, 177 Pac. 671, 180 Pac. 137, we held that the port, although it had power to maintain and operate warehouses and to manufacture ice in connection with its warehousing business, had no power under the grant to build a plant

and engage in manufacturing ice largely in excess of its needs and to sell to others.

In *Port of Everett v. Everett Improvement Co.,* 124 Wash. 486, 214 Pac. 1064, it was distinctly held that; in order to comply with the provisions for a comprehensive scheme to be adopted or ratified by a vote of the people, § 9694 and § 9695, *supra,* meant that:

"The commission must adopt, and have approved, at least a general outline plan of the improvements it intends to construct. If it is intended to construct sea walls, jetties, piers, quays, slips, gridirons, and other structures and things enumerated in the resolution, a general plan of the several structures must be outlined, showing with definiteness their location, character and general dimensions, so that one examining the plan may know with some degree of certainty what is intended to be done. This we think evident from the general tenor of the port district act, and particularly so from § 9695 thereof. This section provides, it will be observed, that, when such general plans have been adopted, every improvement to be made by the commission shall be made substantially in accordance therewith, and that changes therein can be made only by a majority vote of the qualified electors of the port district at an election held for that purpose. Manifestly, if it was the intent of the statute that the port commission could adopt as its comprehensive scheme the general powers conferred on the district, and thereafter construct such of the enumerated things as they please, this clause of the statute would have no meaning; there could be no departure from the comprehensive scheme without a departure from the powers conferred on the port district by the legislature."

We believe that the quotation from the last cited decision is of controlling force here. While it is true that the port commission has been granted very broad and extensive powers, they must lay out and outline what they intend to do in the comprehensive scheme,

410

submit it to the people, or, as complained of by appellants, some amendment thereto adopted by the people.

It may be unfortunately obstructive in some instances. It is true that the port commission cannot see, years in advance, the necessity of repairs or improvements to some channels by reason of the increase in commerce. But the same thing is true as to many other activities of port commissions. For instance, a warehouse may be built this year that is ample for all the needs of commerce at that port in prospect for ten years, yet a sudden increase in commerce within a very few years would necessitate a great enlargement of the warehouse.

There is another reason to our minds why the proposed resolution of appellants cannot be made effective. The waterway district, as alleged in the complaint, was in existence prior to the creation of the port district. Under the provisions of § 9696, *supra,* which we have quoted, had the comprehensive scheme included the acquirement or construction of the improvement embraced in the waterway district, then in existence, it would have conformed to that statute, but it made no such provision. It, therefore, has no power over the property of the waterway district and the waterway district cannot act in conjunction with the port district as authorized in that section.

We feel bound to conclude that the decree of the trial court is right and must be affirmed. It is so ordered.

PARKER, MAIN, MITCHELL, TOLMAN, FRENCH, and BEALS, JJ., concur.