[No. 26891. Department Two. February 18, 1938.]

AL HUGHBANKS, *Appellant,* v. THE PORT OF SEATTLE et al., *Respondents.*[1]

[1]Reported in 76 P. (2d) 603.

*Charles E. Allen,* for appellant.

*Fairbrook & Williams* and *Preston, Thorgrimson & Turner,* for respondents.

*McMicken, Rupp & Schweppe, Winlock Miller, Jr.,* and *George F. Yantis, amici curiae.*

MILLARD, J.—On his own behalf as a resident tax-payer within the boundaries of the port district of Seattle, and on behalf of all others similarly situated, plaintiff instituted this action against the port of Seattle and its commissioners to enjoin the construction of certain improvements proposed by the port commission in its resolution No. 917, in certain units of its comprehensive scheme of harbor improvement, and from issuing and selling $2,300,000 of its general serial bonds for the purpose of providing funds to be used in payment for the improvements in question. Trial to the court resulted in a decree dismissing the action. The plaintiff has appealed.

Our disposition of this appeal obviates consideration of all assignments other than that the decree is erroneous in that the port is without authority to construct the proposed improvements, as a comprehensive scheme of harbor improvement has not been officially adopted by the port district and ratified by a majority vote of the electors of the district at an election held for such purpose.

Respondents purport to act pursuant to resolution No. 917, adopted by the port commission September 12, 1937, which is based on the port's resolution No. 702 which was adopted by a vote of the people March 11, 1930.

The purpose of this action is to test the power of the commissioners of the port of Seattle to carry out the terms of resolution No. 917 of the port, which provides, without submission to a vote of the electors of

the port district, for the issuance of $2,300,000 in general obligation bonds of the port. Two million dollars would be expended upon certain improvements to be placed on a piece of property located within unit 15 of the port, and the remainder would be spent in the erection of a transit shed on pier 40, which is within unit 1 of the port of Seattle.

The proposed improvements contemplated by the expenditure of the proceeds of this bond issue can not, it is clear, be made unless the improvements are in accordance with a valid comprehensive plan of the port of Seattle. The statute (Rem. Rev. Stat., §§ 9694, 9695 [P. C. §§ 4477, 4478]), respecting the adoption of a comprehensive plan of harbor improvement which plan may not be changed except by a majority vote of the qualified electors of the port district, reads as follows:

"It shall be the duty of the port commission of any port district, before creating any improvements hereunder, to adopt a comprehensive scheme of harbor improvement in such port district, after a public hearing thereon, of which at least ten days' notice shall be published in a daily newspaper of general circulation in such port district, and no expenditure for the carrying on of any harbor improvements shall be made by said port commission other than the necessary salaries, including engineers, clerical and office expense of such port district, and the cost of engineering, surveying, preparation and collection of data necessary for the making and adoption of a general scheme of harbor improvements in such port district, unless and until such comprehensive scheme of harbor improvement has been so officially adopted by the port commission and ratified by a majority vote of the people of such port district voting thereon in favor thereof at an election which shall be held for such purpose.

"When such general plans shall have been adopted or approved, as aforesaid, every improvement to be made by said commission shall be made substantially

in accordance therewith unless and until such general plans shall have been changed by a majority vote of the qualified electors of the port district voting thereon at an election held for such purpose."

The patent purpose of the legislature was to require a port commission, prior to entering into any scheme of improvement, to place before the people an actual plan disclosing with reasonable definiteness the character of the improvements. That this is so, is emphasized by the language in Rem. Rev. Stat., § 9695, that, when the general plans have been adopted or approved, as required by Rem. Rev. Stat., § 9694, every improvement to be made by the commission shall be substantially in accordance with such plans unless and until the general plans have been changed by a majority vote of the qualified electors of the port district.

The issues relative to both of the proposed improvements are the same, hence the discussion may be restricted to the expenditure proposed for unit No. 15. The complete comprehensive plan of the port of Seattle relating to unit No. 15, where two million dollars of this money is to be spent, is contained in resolution No. 702 of the port of Seattle, which resolution was adopted by a vote of the electors of the port district March 11, 1930. That part of the comprehensive plan having to do with unit No. 15 reads as follows:

"Unit Number 15

"For the accommodation of overseas, coastwise and local shipping and for such industrial purposes as are in aid of commerce and navigation and incident, necessary or convenient to the enjoyment of any of the purposes permitted under and by virtue of the laws declaring and governing the powers of port districts, the ownership, management and the acquirement of tracts of land with leases of harbor areas fronting the same situate on the water front of the city of Seattle between the north marginal line of Connecticut street and the north marginal line of Washington street, with any

structure or structures situate thereon; and the construction, maintenance and operation by lease, or directly, on the same of sea walls, jetties, piers, docks, boat landings, wharves, slips, quays, warehouses, store houses, cold storage plants, terminal icing plants, coal bunkers, grain bins, elevators, lifts, oil tanks, ferries, canals, locks, tidal basins, bridges, subways, tramways, cableways, conveyors, freight and passenger sheds, ferry landings, boat moorings, railroad tracks and yards and equipment thereof and all other necessary or convenient rail and water transfer and terminal facilities with the equipment and appliances of whatsoever sort and kind, necessary or convenient for the full, complete and economical maintenance and operation of the terminals aforesaid, and the use and improvement of any part of said areas for any purpose permitted, now or hereafter, under and by virtue of the laws declaring and governing powers of port districts."

Resolution No. 702 provides for the acquisition of tracts of land with leases of harbor areas between the north marginal line of two parallel streets in the city of Seattle, the course of which streets is east and west. The eastern boundary of unit No. 15 is not defined. Nowhere in the resolution is there anything from which there may be ascertained the plan of any improvements for the area or any portion of it. The language reciting the possible uses of the property does no more than state the powers of a port district under the provisions of Rem. Rev. Stat., § 9692 [P. C. § 4475]. The resolution recites that the possible uses of the property shall be as broad as the existing powers of the port district, together with any powers thereafter granted. Clearly, the resolution is fatally defective as a purported comprehensive scheme under the statute quoted above.

We held in *Port of Everett v. Everett Imp. Company,* 124 Wash. 486, 214 Pac. 1064, that there is not a compliance with the statute if the resolution, like

that in the case at bar, does no more than declare the port commission's purpose to exercise the general powers conferred on port districts, without any map, plan, specification, or description of the work intended to be constructed. We said:

"It is our opinion that the objections should have been sustained. The whole of the contemplated comprehensive scheme is embodied in the resolution above quoted; no map, plan, specification, or detailed description of the work intended to be constructed accompanied the resolution. The resolution, it will be noted, is nothing more in effect than a declaration that the port commission purposes to exercise at some indeterminate time in the future the general powers the statute confers on port districts. The comprehensive scheme provided for in §§ 9694 and 9695 of the code must mean something more than this. In our opinion, to comply with the statute, the commission must adopt, and have approved, at least a general outline plan of the improvements it intends to construct. If it is intended to construct sea walls, jetties, piers, quays, slips, gridirons, and the other structures and things enumerated in the resolution, a general plan of the several structures must be outlined, showing with definiteness their location, character and general dimensions, so that one examining the plan may know with some degree of certainty what is intended to be done. This we think evident from the general tenor of the port district act, and particularly so from § 9695 thereof. This section provides, it will be observed, that, when such general plans have been adopted, every improvement to be made by the commission shall be made substantially in accordance therewith, and that changes therein can be made only by a majority vote of the qualified electors of the port district at an election held for that purpose. Manifestly, if it was the intent of the statute that the port commission could adopt as its comprehensive scheme the general powers conferred on the district, and thereafter construct such of the enumerated things as they please, this clause of the statute would have no meaning; there would be no departure from the comprehensive scheme

without a departure from the powers conferred on the port district by the legislature.

"Again, the port commission, by the terms of the act, is limited in its acquisition of property by eminent domain to property 'necessary for the purposes of the port district.' While the term 'necessary' as here used undoubtedly means such property as is reasonably necessary for its purposes, that is, such property as its comprehensive scheme will require when completed, it does not mean all such property as the port commission may deem that it will possibly need for its purposes at some remote time in the future. Indeed, it may be seriously questioned whether the legislature can grant to a municipal corporation the power to acquire by condemnation property which the municipality desires merely because it believes that at some time in the future it may have use for it, as this would be to say that the legislature could grant to the municipality power to acquire property for speculative uses; but certainly where the grant is of power to acquire only necessary property, there must be a showing that the particular property sought to be acquired is thus necessary, and without some definite stated plan of improvement, this necessity cannot be shown. So here, since there is no such definite plan, it is impossible for the court or anyone to know whether all or what particular part of the property here sought to be condemned is necessary for the use of the port district, and the right of condemnation must fail for this reason."

The resolution in the case at bar endeavors, like the one in the case cited, to create, by the mere enumeration of all of the powers of a port district, a plan under which any conceivable improvements could later be made without a vote of the people. Such a resolution is invalid. *Port of Everett v. Everett Imp. Co., supra; Griggs v. Port of Tacoma,* 150 Wash. 402, 273 Pac. 521.

The port commission has only such powers as the legislature has granted to it. Resolution No. 702 does not satisfy the requirements of the statute defining the powers of the port commission.

"It must be remembered that a port district is purely a creature of the statute. It has such powers as the legislature has granted to it, and such powers only. This being true, the language granting the powers will never be extended beyond their plain and ordinary meaning, and, if it were even doubtful whether the grant of power to incur indebtedness and issue bonds required the assent of the voters of the district, the courts would, in the interest of the persons who must bear the burden of paying the indebtedness incurred, give to it that construction." *Donworth v. Port of Seattle,* 126 Wash. 465, 218 Pac. 243.

There has not yet been submitted to the voters of the port district a definite plan of improvements which will enable the electors to determine whether they desire those particular improvements. Resolution No. 917, under which the port commission purports to act, is based, as stated above, on resolution No. 702. Resolution No. 917 provides, without submission to the vote of the people, for the issuance of the bonds, the validity of which is challenged by the appellant. In the absence of an express authorization by the electors of the port district in the form of an amendment to the general scheme, the commissioners could not legally depart from the comprehensive scheme. Neither resolution No. 702 nor resolution No. 917 comply with the statutory requirements.

The respondents acted in excess of their statutory powers in failing to submit to the people of the port district the proposed scheme of improvements for which the proceeds from the proposed bond issue would be expended. It follows that the decree should be reversed, and the case remanded with direction to the trial court to grant the injunction for which the appellant prays.

It is so ordered.

Steinert, C. J., Beals, Blake, and Geraghty, JJ., concur.