[No. 17419. Department Two. May 3, 1923.]

PORT OF EVERETT, *Respondent,* v. EVERETT IMPROVE-
MENT COMPANY et al., *Appellants.*[1]

EMINENT DOMAIN (104)—BY PORT DISTRICT—PROCEEDINGS—CON-
DITIONS PRECEDENT—ADOPTION OF PLAN—POWERS OF COMMISSION—
STATUTES. It is not a compliance with the Port District Act, Rem.
Comp. Stat., §§ 9694 and 9695, requiring the adoption of a compre-
hensive scheme for improvements before condemning lands, to adopt
a resolution which in effect does no more than declare the port
commission's purpose, at some indefinite time in the future, to ex-
ercise the general powers conferred on port districts, without any
map, plan, specification or description of the work intended to be
constructed; especially in view of § 9695, providing that the im-
provement shall be made substantially on the plans adopted, unless
changes are authorized by a majority vote of the qualified electors.

SAME (39)—NECESSITY FOR APPROPRIATION — EVIDENCE — SUFFICI-
ENCY. Where there are no general plans for a port district improve-
ment, it cannot be said that there is any "necessity" for the con-
demnation of particular property which the district believes it may
have use for in the future.

[1] Reported in 214 Pac. 1064.

Appeal from judgments of the superior court·for Snohomish county, Alston, J., entered April 20, 1922, adjudging a public use and necessity and awarding damages in condemnation proceedings. Reversed. : .

*Lyle, Henderson & Carnahan* and *J. A. Coleman,* for appellants.

*Clifford Newton,* for respondent.

FULLERTON, J.—The legislature of the state of Washington, at its biennial session of 1911, authorized the establishment in the various counties of this state of ''Port Districts, for the acquirement, construction, maintenance, operation, development and regulation of a system of harbor improvements, and rail and water transfer and terminal facilities within such district.'' Laws of 1911, p. 412; Rem. Comp. Stat., §§ 9688-9718.

Section 9692 of the act provides:

''All port districts organized under the provisions of this act shall be and are hereby authorized to acquire by purchase or condemnation, or both, all lands, property, property rights, leases or easements necessary for the purposes of the port districts, and to exercise the right of eminent domain in the acquirement or damaging of all land, property, property ·rights, leases or easements, and the levying and collection of assessments upon property for the payment of all damages and compensation in carrying out the provisions for which said district shall have been created, and such right shall be exercised in the same manner and by the same procedure as is or may be provided by law for cities of the first class, except in so far as such may be inconsistent with the provisions of this act, and the duties devolving upon the city treasurer under said law be and the same are hereby imposed upon the county treasurer for the ·purposes of this act; to lay out, construct, condemn, purchase, acquire, add to, maintain, conduct and op-

erate any and all systems of seawalls, jetties, piers, wharves, docks, boat landings, warehouses, storehouses, elevators, grain-bins, cold storage plants, terminal icing plants, bunkers, oil tanks, ferries, canals, locks, tidal basins, bridges, subways, tramways, cableways, conveyors, together with modern appliances for the economical handling, storing and transporting of freight and handling of passenger traffic, and other harbor improvements, rail and water transfer and terminal facilities within such port district; and in connection with the operation of the improvement of the port district to perform all customary services including the handling, weighing, measuring and reconditioning all commodities received; . . ."

Section 9694 provides:

"It shall be the duty of the port commission of any port district, before creating any improvements hereunder, to adopt a comprehensive scheme of harbor improvement in such port district, after a public hearing thereon, of which at least ten days' notice shall be published in a daily newspaper of general circulation in such port district, and no expenditure for the carrying on of any harbor improvements shall be made by said port commission other than the necessary salaries, including engineers, clerical and office expense of such port district, and the cost of engineering, surveying, preparation and collection of data necessary for the making and adoption of a general scheme of harbor improvements in such port district, unless and until such comprehensive scheme of harbor improvement has been so officially adopted by the port commission and ratified by a majority vote of the people of such port district voting thereon in favor thereof at an election which shall be held for such purpose."

Section 9695 provides:

"When such general plans shall have been adopted or approved, as aforesaid, every improvement to be made by said commission shall be made substantially in accordance therewith unless and until such general

plans shall have been changed by a majority vote of the qualified electors of the port district voting thereon at an election held for such purpose."

Under and in pursuance of the foregoing statutes, the respondent, Port of Everett, was organized. Thereafter its commissioners, as a comprehensive scheme of harbor improvement, adopted the following:

"RESOLUTION No. 15

"A RESOLUTION OF THE PORT OF EVERETT COMMISSION ADOPTING A COMPREHENSIVE SCHEME OF HARBOR IMPROVEMENT OF THE PORT DISTRICT OF THE PORT OF EVERETT.

"BE IT RESOLVED BY THE PORT COMMISSION OF THE PORT OF EVERETT AS FOLLOWS:

"That the Port of Everett Commission does hereby officially adopt a comprehensive scheme of harbor improvement in the Port District of the Port of Everett after having a public hearing thereon after ten days' notice thereof published in a daily newspaper of general circulation in said Port District as follows:

GENERAL FEATURES.

"The acquirement, construction, maintenance, operation, development and regulation of a system of harbor development, and rail and water transfer and terminal facilities within the Port District of the Port of Everett.

"These general features to be accomplished by the acquisition of a tract or tracts of shore or tidelands with adjacent land as may be found necessary or convenient and by the construction thereon of sea walls, jetties, piers, quays, slips, gridirons, wharves, docks, boat landings, warehouses, storehouses, elevators, grain-bins, terminal icing plants, bunkers, bridges, oil tanks, cold storage plants, together with modern appliances for the economical handling, storing and transporting of freight, and handling passenger traffic; also the construction of highways, railways and terminal tracts and yards and the equipment and operation of the same so as to accomplish the convenient

and economical transfer between ship and railway, and to and from warehouses, or storehouses, to or from land or sea; also the acquirement or construction and operation of tramways, cableways, ferries and conveyance to be operated in connection with the foregoing.

." (1)  The particular features of the plan which, in connection with the foregoing general features and general method of accomplishment of the same, constitute said comprehensive scheme of harbor improvement, consist of the following:

"(1) (A)  The acquiring by purchase or condemnation, or both, of all lands, property, property rights, leases or easements necessary for the purpose of the Port District of the Port of Everett appertaining and belonging to that certain tract of land situated in Snohomish county, Washington, lying west of the Northern Pacific right-of-way at the westerly end of Hewitt Avenue, Everett, Washington, known as the City Dock Site, more particularly described as follows:

[Here follows a description by metes and bounds of a tract of land containing 1.71 acres.]

"(1) (B)  The acquiring by purchase or condemnation, or both, of all lands, property, property rights, leases or easements necessary for the purpose of the Port District of the Port of Everett appertaining and belonging to that certain tract of land situated in Snohomish county, Washington, lying west of the Federal Pierhead line on the west side of the Snohomish river channel, more particularly described as follows:

[Here follows a description by metes and bounds of a tract of land containing 1,860 acres.]

"(1) (C)  The acquiring by purchase or condemnation, or both, of all lands, property, property rights, leases or easements necessary for the purpose of the Port District of the Port of Everett appertaining and belonging to that certain tract of land situate in Snohomish county, Washington, lying north of Front street in Mukilteo and at the foot of Lincoln street, more particularly described as follows:

[Here follows a description by metes and bounds of a tract of land containing 0.16 acres.]

"(2)  The waterways and properties above set forth to be developed as follows:

"The properties described in Paragraph (1) (a), by the improvement of said wharf and warehouses located on said tract of land, by renewal of floors and floor system, extension of wharf, if necessary, and any other improvements of a maintenance character or otherwise.

"The properties described in (1) (b), by the construction of several waterways of different widths. From certain of these waterways, slips will run towards the center of the tract at an angle of about forty-five degrees, and others to be improved by the construction of quay walls. Such slips, wharves, and quay walls to be constructed at such intervals as will provide piers of suitable widths for the construction thereon of the improvements herein mentioned. Such arrangement of waterways provides strips of land several hundred feet in width on which roadways, railroad tracts, warehouses, or industrial plants and buildings may be located and maintained, all in accordance with the plans set forth in the comprehensive scheme as approved.

"The properties described in Paragraph (1) (c), by the construction of a pier suitable for small boats, together with a movable landing for a ferry. The foundation to be of pile structure and the superstructure to be of wood."

The foregoing resolution was adopted by the port commissioners, after a public hearing had thereon of which due notice was given, and was subsequently ratified by a majority vote of the people of such port district voting thereon at an election held for such purpose. Following the ratification of the resolution, the port commissioners passed a further resolution authorizing the acquisition of the real property described therein by condemnation. The present action was

thereupon begun for that purpose. The land comprising the 1,860 acre tract was at that time owned in part by the Everett Improvement Company, in part by the heirs of Charles Whitman, deceased, in part by A. M. Bailey and his wife, and in part by C. E. Sutherland and his wife. These parties appeared and resisted the proceedings, basing their principal objection on the ground that the comprehensive scheme adopted by the port commissioners was too indefinite and uncertain to comply with the requirements of the statutes, and insufficient upon which to base a condemnation proceeding. The objection was overruled by the court and an adjudication of public use entered. Thereafter a trial was had before a jury as to the compensation to be paid for the property taken; the jury finding its value to be two dollars per acre. From the judgments entered, the owners of the property appeal.

The appellants urge in this court the objections made in the court below. It is our opinion that the objections should have been sustained. The whole of the contemplated comprehensive scheme is embodied in the resolution above quoted; no map, plan, specification, or detailed description of the work intended to be constructed accompanied the resolution. The resolution, it will be noted, is nothing more in effect than a declaration that the port commission purposes to exercise at some indeterminate time in the future the general powers the statute confers on port districts. The comprehensive scheme provided for in §§ 9694 and 9695 of the code must mean something more than this. In our opinion, to comply with the statute, the commission must adopt, and have approved, at least a general outline plan of the improvements it intends to construct. If it is intended to construct sea walls, jetties, piers, quays, slips, gridirons, and the other structures

and things enumerated in the resolution, a general plan of the several structures must be outlined, showing with definiteness their location, character and general dimensions, so that one examining the plan may know with some degree of certainty what is intended to be done. This we think evident from the general tenor of the port district act, and particularly so from § 9695 thereof. This section provides, it will be observed, that, when such general plans have been adopted, every improvement to be made by the commission shall be made substantially in accordance therewith, and that changes therein can be made only by a majority vote of the qualified electors of the port district at an election held for that purpose. Manifestly, if it was the intent of the statute that the port commission could adopt as its comprehensive scheme the general powers conferred on the district, and thereafter construct such of the enumerated things as they please, this clause of the statute would have no meaning; there could be no departure from the comprehensive scheme without a departure from the powers conferred on the port district by the legislature.

Again, the port commission, by the terms of the act, is limited in its acquisition of property by eminent domain to property "necessary for the purposes of the port district." While the term "necessary" as here used undoubtedly means such property as is reasonably necessary for its purposes, that is, such property as its comprehensive scheme will require when completed, it does not mean all such property as the port commission may deem that it will possibly need for its purposes at some remote time in the future. Indeed, it may be seriously questioned whether the legislature can grant to a municipal corporation the power to acquire by condemnation property which the municipal-

ity desires merely because it believes that at some time in the future it may have use for it, as this would be to say that the legislature could grant to the municipality power to acquire property for speculative uses; but certainly where the grant is of power to acquire only necessary property, there must be a showing that the particular property sought to be acquired is thus necessary, and without some definite stated plan of improvement, this necessity cannot be shown. So here, since there is no such definite plan, it is impossible for the court or anyone to know whether all or what particular part of the property here sought to be condemned is necessary for the use of the port district, and the right of condemnation must fail for this reason.

But we think it unnecessary to pursue the inquiry. The trial court erred in directing a condemnation, and its judgment is reversed with instructions to dismiss the proceedings.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.