[No. 36645. Department One. June 27, 1963.]

J. L. HUTCHINSON et al., Appellants, v. PORT OF BENTON
et al., Respondents.[*]

*George Edward Heidlebaugh,* for appellants.

*Butler & Yencopal,* for respondents.

*R. W. Gibson* and *R. W. Graham,* amici curiae.

[*] Reported in 383 P. (2d) 500.

HALE, J.—This action by taxpayers is brought to enjoin and declare illegal the proposed purchase from the United States of a tract of land by the Port of Benton.

The tract, located about 5 miles north of Richland, Washington, runs along and fronts upon the Columbia River for a distance of approximately 6,000 feet, and its inland depth is about 2,100 feet. Roughly rectangular in shape, it comprises an area of 290 acres. The inland, or westerly, edge is at an elevation of 400 feet above sea level and slopes in an easterly direction to the river's edge for its 2,100 foot width to an elevation of 340 feet. The last 200 feet or so toward the river are the steepest.

This tract, along with hundreds of square miles in the area, came into possession of the United States by eminent domain proceedings in 1941 and 1942 for war purposes in the construction of the Hanford works. The War Department was the first agency to acquire this land for the United States, doing so to construct an atomic energy project. Thereafter, it was transferred to the United States Atomic Energy Commission which leased the particular tract in question to the city of Richland. The latter zoned it for industrial and manufacturing uses. Later, the Atomic Energy Commission transferred this tract to the Corps of Engineers, United States Army, for administration thereof on behalf of the United States. The 290-acre tract is still owned by the United States.

By letter of October 23, 1961, the Corps of Engineers, acting under the authority of Public Law 86-645, Act of July 14, 1960; 33 U.S.C. § 578, offered this particular tract for sale to the Port of Benton at the declared fair market value of $100,000. The Port of Benton, in response to the Corps of Engineers' proposal, accepted the offer in a formal letter signed by its three commissioners, which letter, as set forth in the court's findings, reads in part as follows:

" 'Upon purchase of the above acreage it is the intent of the Port of Benton that development shall proceed as follows:

" '1. The area adjacent to the west shoreline is to become a Public Port, with needed facilities to be constructed.

" '2. The western portion of this parcel will become an Industrial Park. This Park will provide an area for Richland's much needed industrial development.' "

The foregoing letter of acceptance was in effect when, in contemplation of the proposed purchase, the port commissioners regularly adopted an addition to or amendment of its comprehensive plan for harbor improvements by promulgating a resolution on February 14, 1962, the pertinent parts of which state:

" ' . . .

" '*Section* 1. . . . the Port Commission of the Port of Benton, Washington, does hereby adopt the following addition to its original comprehensive plan of harbor improvement as heretofore added to:

" ' . . .

" 'B. 1. The port district shall dredge the Columbia River to a depth of at least 12 feet in as close as possible to the shore of the above-described tract of land for a distance of approximately 3,000 feet from the north boundary of said tract of land.

" '2. The port district shall construct two 300-foot sheet steel pile wall docks adjacent to said dredged area, and shall level and fill the areas behind such docks with material readily available behind said dock area.

" '3. The port district shall construct a road to allow easy access to this dock area.

" 'C. The port district shall construct two warehouse buildings of approximately 60' x 120' on said tract.

" 'D. The port district shall construct roads, railroad spurs, utilities and other necessary facilities where necessary in this tract in order to provide easy and proper access to the improvements to be constructed thereon, and shall grub, clear and fill the areas in said tract as needed for all of such improvements.' "

The trial court found that the commissioners of the Port of Benton intend to develop the tract by construction of port facilities thereon and to lease portions of it for industrial and commercial purposes to others under RCW 53.08-.020 and RCW 53.08.040. The trial court expressly found that the acquisition was not pursuant to, or intended to be under, the Port Industrial Development Act,[1] Laws of 1955,

---

[1] See *Hogue v. Port of Seattle,* 54 Wn. (2d) 799, 341 P. (2d) 171.

chapter 73, p. 429; RCW 53.25, and entered judgment of dismissal. The taxpayers appeal.

Appellants challenge the proposed purchase on two distinct grounds: (1) That the purchase is for the purpose of devoting public property unconstitutionally to an industrial development or industrial park; and (2) that the comprehensive plan was legally insufficient to authorize the acquisition.

Appellants list 23 assignments of error in their brief, but argue only two. We disregard the remaining assignments of error under the well-established rule that assignments of error not argued in the brief are waived and will not be considered by this court. *Seattle v. Love,* 61 Wn. (2d) 113, 377 P. (2d) 255; *Verstraelen v. Kellogg,* 60 Wn. (2d) 115, 372 P. (2d) 543; *Wickre v. Allen,* 58 Wn. (2d) 770, 364 P. (2d) 911; *Kent v. Whitaker,* 58 Wn. (2d) 569, 364 P. (2d) 556; *Fulton v. Fulton,* 57 Wn. (2d) 331, 357 P. (2d) 169.

The first of the two assignments of error argued by appellants is that the port intends to create an industrial park unconstitutionally and in excess of its powers. This assignment may be disposed of speedily. Other than the statement contained in the letter of December 4, 1961, from the port to the district engineer that the western portion of the parcel was to become an industrial park, we find no evidence that respondents intend to invoke Laws of 1955, chapter 73, p. 429, Port Industrial Development Act (RCW 53.25), and the trial court so found. Neither the validity nor the effect of that statute is before us; nor does the court's finding that the port intends to lease portions of the tract for industrial and commercial purposes under RCW 53.08.020 and RCW 53.08.040 raise a justiciable question now. Obviously, the intent to lease parts of the tract is consonant with powers conferred on port districts by the first creative enactment in 1911, which reads:

"All port districts . . . shall be and are hereby authorized . . . to execute leases of all lands, wharves, docks and property owned and controlled by said port district upon such terms as the port commission may deem proper: . . ." Laws of 1911, chapter 92, § 4, p. 418, 419.

In the first case construing the entire enactment, this court passed upon the power of the then infant port districts to lease out land in the following language:

". . . Perhaps if the sole purpose of acquiring the property was to lease it to an individual or corporation for private use, its acquisition and lease would be in violation of the constitutional provision cited. But when the purpose is to establish public wharves or docks, and the lease is for a limited time, . . . it cannot be said to be the acquisition of the property for a private purpose nor the giving of money or property or the loaning of the credit of the municipality to an individual or corporation . . ." *Paine v. Port of Seattle,* 70 Wash. 294, 322, 126 Pac. 628, 127 Pac. 580, 582.

Years later in more explicit language, the legislature granted additional powers to port districts by enactment of Laws of 1955, chapter 65, § 5, p. 405, 407 (RCW 53.08.040), which reads:

"A district may improve its lands by dredging, filling, bulkheading, providing waterways or otherwise developing such lands for sale or lease for industrial and commercial purposes."

The foregoing section is not a part of RCW 53.25, the Port Industrial Development Act, Laws of 1955, chapter 73, p. 429, although adopted by the same session of the legislature. It was this latter enactment cited by appellants which was so analytically considered by this court in *Hogue v. Port of Seattle,* 54 Wn. (2d) 799, 341 P. (2d) 171.

The *Hogue* case, *supra,* dealt only with the particular problems arising from the acquisition by eminent domain of marginal lands for the express purpose of creating industrial sites thereon. Quite obviously, the mere use of the expression "industrial park" by the respondents in their letter to the Army Engineers did not officially commit the port commission to the establishment of an industrial park as contemplated by Laws of 1955, chapter 73, p. 429 (RCW 53.25), the Port Industrial Development Act. There is no transaction pending or before us for consideration other than the proposed acquisition of the 290-acre tract from the United States government to be used and developed

in accordance with Laws of 1911, chapter 92, p. 412, as amended.

To answer appellants' contention here requires an advisory opinion from us delineating what we think might be a legal course of conduct for the port to follow with respect to the use and development of this tract of land in the future, there being no transaction now pending between the port and others under RCW 53.08.020 and RCW 53.08-.040. We do not give advisory opinions. *State v. Grabinski*, 33 Wn. (2d) 603, 206 P. (2d) 1022. Our decision must be limited to the facts of the instant case. *State v. Grabinski, supra; Hogue v. Port of Seattle, supra; State v. Lundquist*, 60 Wn. (2d) 397, 374 P. (2d) 246. Thus, the first assignment of error is without merit.

Appellants' second argued assignment of error challenges the validity of the comprehensive plan of harbor developments as promulgated by the respondent port, contending it to be legally insufficient to allow the purchase of the land under it.

Assuming, *arguendo*, that the adoption of a comprehensive plan of harbor improvements is a condition precedent to the acquisition of this tract, we next consider whether the plan adopted by the Port of Benton is legally sufficient. In the first case touching upon the subject of the comprehensive plan, *Paine v. Port of Seattle*, 70 Wash. 294, 314, 126 Pac. 628, we said:

" . . . We do not think it was necessary that the plans and specifications to be adopted at that time should be such complete detailed plans and specifications as would be necessary to have for the final construction of the improvement. We think the statute is satisfied when the adopted plans are such as to fairly inform the voters of the general nature and extent of the proposed improvement. . . . "

In *Port of Everett v. Everett Imp. Co.*, 124 Wash. 486, 214 Pac. 1064, where the port sought to acquire a 1,860-acre tract for port development, the comprehensive plan was held inadequate, but an examination of it as set forth in the opinion shows that it was no plan at all but merely

a recital and a listing of all of the general improvements ultimately intended to be completed on the project.

The comprehensive scheme of improvement adopted by resolution on January 25, 1960, by the Port of Benton must be considered in *pari materia* with its amendment of February 14, 1962, resolution No. 62-6 previously set forth. The resolutions show the comprehensive plan to include the following:

(1) A dockage facility created by a sheet steel pile wall placed so as to provide required draft for barges;

(2) dredging of the Columbia River a minimum depth of 12 feet from the north boundary of the tract for a distance of 3,000 feet south, as close as possible to the shore;

(3) construction of two 300-foot sheet steel pile wall docks adjacent to the 3,000-foot dredged channel;

(4) leveling and filling the areas behind the two 300-foot docks;

(5) constructing a road of easy access to the docks;

(6) construction of two warehouse buildings approximately 60 x 120 feet in dimensions; and

(7) constructing roads, railroad spurs and utilities on the tract to provide access to the foregoing improvements and grub and clear the areas surrounding them.

We think the foregoing comprehensive plan, while not held to be a model of preciseness, is sufficient to give the taxpayers a fairly detailed picture of what the port will do with this land if and when it is acquired, and informs the taxpayers of the manner and purposes for which their money will be spent.

Accordingly, we find the comprehensive plan sufficient to meet the requirements of the statute prescribing it.

The judgment of the trial court is affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.