[No. 39544.    Department One.    December 28, 1967.]

*In the Matter of the Petition of the* PORT OF SEATTLE.
PORT OF SEATTLE, *Respondent*, v. LILLIAN MANZO ISERNIO
*et al., Petitioners.**

*Donald H. Thompson* (of *Lee, Krilich, Lowry & Thompson*), for petitioners.

*Bogle, Gates, Dobrin, Wakefield & Long, Ronald E. McKinstry*, and *Ronald T. Schaps*, for respondent.

WEAVER, J.—The Port of Seattle, a municipal corporation that owns and operates the Seattle-Tacoma International Airport, brought this action to condemn certain real property owned by the petitioners. Both the complaint and the resolution of the Port Authority specify that the property is being condemned

> for the location and construction of an additional runway for the landing and taking off of aircraft and for related facilities including, among others, additional clear zone,

*Reported in 435 P.2d 991.

taxi-ways, roadway, utility extension and for land upon which to locate and construct said additional runway and related facilities.

The land involved is the last of 186 parcels being acquired for the construction of a new runway and related facilities. Increased air traffic at the airport makes this acquisition a necessity.[1]

The proposed expansion is to be constructed in three phases: Phase 1—construction of an 8,500-foot runway parallel to the existing north-south runway; phase 2—extension of the new runway 975 feet to the north; and phase 3—extension of the same runway to the south 775 feet. The total runway length of 10,250 feet is the maximum usable length at this site.

By writ of certiorari, petitioners seek appellate review of the order of public use and necessity entered by the trial court.

For their first assignment of error, petitioners claim:

The trial court lacked jurisdiction to enter the Order of Public Use and Necessity, so far [as] all of Parcel 47 is concerned, for the reason that phase 3 has not been adopted as a part of the comprehensive plan.

In support of their first assignment of error, that the court lacked jurisdiction, petitioners argue, syllogistically:

(a) that RCW 53.20.010[2] requires that a port district, before creating any improvement,

adopt a comprehensive scheme of *harbor improvement* . . . after a public hearing thereon, . . . and no expenditure for the carrying on of any *harbor improvements* shall be made by said port commission . . . unless and until such comprehensive scheme of *harbor improvement* has been so officially adopted by the port commission. (Italics ours.)

---

[1] In 1965 there were 98,700 landings and takeoffs, and in 1966, 117,100. By 1975 it is projected that the landings and takeoffs will number at least 223,000.

[2] Laws of 1911, ch. 92, § 6, as amended by Laws of 1913, ch. 62, § 6 and Laws of 1943, ch. 166, § 3 now codified as RCW 53.20.010.

and that RCW 53.20.020 requires that every improvement to be made by the commission

shall be made substantially in accordance therewith [the comprehensive scheme] unless and until such general plans shall have been officially changed by the port commission after a public hearing thereon, . . . .

(b) that phase 3 has never been adopted as an amendment to the comprehensive plan of Sea-Tac Airport; and

(c) that the court, therefore, does not have jurisdiction to enter an order of public use and necessity applying to parcel 47.

In support of their argument, petitioners rely upon *Port of Everett v. Everett Improvement Co.*, 124 Wash. 486, 214 Pac. 1064 (1923), wherein a comprehensive scheme or plan was held to be inadequate.

*Port of Everett, supra*, involves the acquisition of a number of geographically separate tracts of land for multiple purposes without any indication of the proposed use to which the land would be put, except a general list of almost every conceivable statutory use granted to port districts under *Harbor Improvements*, RCW 53.20.

On several occasions the issue of the degree of detail that must be presented in a "comprehensive scheme of *harbor improvements*" for the purpose of land acquisition has been before this court. *Hutchinson v. Port of Benton*, 62 Wn.2d 451, 383 P.2d 500 (1963); *In re Port of Seattle*, 66 Wn.2d 598, 404 P.2d 25 (1965).

In *Hutchinson, supra*, the court assumed, arguendo, that the adoption of a comprehensive plan of *harbor improvements* is a condition precedent to acquisition of property for the purpose of dredging 3,000 feet of the Columbia River and constructing wharves and other port facilities. The court held "the comprehensive plan sufficient to meet the requirements of the statute prescribing it." We note that this case deals with *harbor improvements*, not with port-operated airports.

In *Port of Seattle, supra*, the court again assumed, arguendo, that the adoption of a comprehensive scheme of

*harbor improvements* is a condition precedent to acquisition of land by condemnation of property adjacent to Sea-Tac Airport for the enlargement of its air cargo terminal. The court found that the resolution adopted, amplified by an exhibit, was sufficient to expand the master plan for the airport and was "more than sufficient to meet the standards laid down for a comprehensive scheme of harbor improvement."

Preliminary to our conclusion, we point out that there is a vast difference, in fact and in statutory application, between a port for ships of the sea and an airport for airplanes. *Everett* and *Hutchinson, supra,* deal with acquisition of property for *sea*ports. Only *Port of Seattle, supra,* deals with acquisition of land by a port district for an *air*port.

■ The acquisition of land, in the instant case, is made pursuant to Laws of 1941, ch. 21 (RCW 14.07) (1941 Municipal Airports Act) and Laws of 1945, ch. 182 (RCW 14.08) (1945 Municipal Airports Act).

RCW 14.07.010 provides, in part:

> Any . . . port district . . . is hereby authorized . . . to acquire . . . sites and other facilities for landings, terminals, housing, repair and care of dirigibles, airplanes, and seaplanes, . . . .

RCW 14.07.020 provides in part:

> Any . . . port district . . . is hereby empowered to acquire lands and other property for said purpose by the exercise of the power of eminent domain . . . .

By statutory definition, a port district is a municipality under the provisions of these statutes. The powers granted thereunder are independent grants of power and have no relationship to the *Harbor Improvement* statutes. There is nothing in the Municipal Airports Acts that requires a municipality to operate its airport under a "comprehensive scheme of harbor improvements." A port district, therefore, having been included within the statutory definition of municipalities, enjoys the same right; hence, we need not

reach, in the instant case, the question of whether the resolution of the Port of Seattle, meets the requirements of the statute for adding to or changing a "comprehensive scheme of harbor improvements."

Petitioners' first assignment of error is not well taken.

As their second assignment of error, petitioners state:

The trial court errored [*sic*] in entering the Order of Public Use and Necessity, so far as all of Parcel 47 is concerned, for the reason that the Port of Seattle is seeking to acquire property not presently needed.

It is true that a target date has not been set for the completion of phase 3 of the new runway. The record amply establishes that petitioners' property, which is directly in line with the location of the new runway made necessary by new planes that are about to fly, will be used for the installation of navigational aids. The necessity for the acquisition of petitioners' property is well supported by the testimony of the port manager.

■ "Necessity" was recently discussed in *Tacoma v. Welcker*, 65 Wn.2d 677, 399 P.2d 330 (1965):

(3) The word "necessary," when used in or in connection with eminent domain statutes, means reasonable necessity, under the circumstances of the particular case. *State ex rel. Lange v. Superior Court*, 61 Wn. (2d) 153, 377 P. (2d) 425 (1963). It does not mean absolute, or indispensable, or immediate need, but rather its meaning is interwoven with the concept of public use (*King Cy. v. Theilman, supra*) [59 Wn.2d 586, 369 P.2d 503 (1962)] and embraces the right of the public to expect and demand the service and facilities to be provided by a proposed acquisition or improvement. [citations omitted] Reasonable necessity for use in a reasonable time is all that is required. . . .

(4) Under the provisions of Const. Art. 1, § 16 (amendment 9) and our interpretation thereof, the issue of whether a proposed acquisition be really for a public use is solely a judicial question, although a legislative declaration thereof will be accorded great weight. *Miller v. Tacoma, supra,* [61 Wn.2d 374, 378 P.2d 464 (1963)] and cases cited. On the other hand, the issue of whether the contemplated acquisition is necessary to carry out the

proposed public use presents a legislative question, and a declaration of necessity by the appropriate legislative body will, by the courts, be deemed conclusive, in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud. (Quoted with approval in *In re Port of Seattle*, 66 Wn.2d 598, 404 P.2d 25 (1965).)

The record amply supports the trial court's conclusion that acquisition of the land included in phase 3 is necessary, and that there is

no evidence of arbitrary action on the part of the Port Commission, of any capriciousness anywhere, or of any fraud or constructive fraud. And these things have to be proven.

The trial court's finding of public use and necessity is approved and its adjudication of public use is affirmed.

It is so ordered.

FINLEY, C. J., HAMILTON and HALE, JJ., and DENNEY, J. Pro Tem., concur.