[No. 42023.    En Banc.    March 23, 1972.]

*In the Matter of the Petition of the* PORT OF SEATTLE.

CARL W. HOVE *et al., Petitioners,* v. THE PORT OF SEATTLE, *Respondent.*

*Cummings & Durkan, Moschetto & Alfieri, Matt Sayre,* and *Carkeek, Harris, Harris, Myers & Vertrees,* for petitioners.

*Bogle, Gates, Dobrin, Wakefield & Long, John C. Coughenour,* and *Barry D. Matsumoto,* for respondent.

STAFFORD, J.—This is a review by certiorari of a superior court order adjudicating public use and necessity in a condemnation action.

The Port of Seattle owns and operates the Seattle-Tacoma International Airport. On April 13, 1971, the Port Commission passed resolution No. 2372 authorizing the acquisition of various parcels of real property located along the airport's northern, northeastern, and western boundaries. Prior to the passage of resolution No. 2372, the Port Commission had incorporated these parcels in its comprehensive scheme by resolutions Nos. 2252 and 2285.

For the purpose of trial, the various tracts of realty were divided into three separate actions corresponding to their respective geographical locations. However, all were consolidated for hearing on the question of public use and necessity.

Petitioners' realty is located along the airport's northeastern boundary. The property is sought for development and construction of the airport's air cargo facilities. Petitioners ask us to review the trial court's order of public use and necessity. Their numerous assignments of error raise two basic issues.

394

The first is whether the property is being condemned for a public use.

■ Resolution No. 2372 states that the property is being so acquired.[1] Although we accord such a declaration great weight, the question of whether a proposed acquisition is really for a public use is a matter for judicial inquiry. Const. art. 1, § 16 (amendment 9); *Des Moines v. Hemenway*, 73 Wn.2d 130, 133, 437 P.2d 171 (1968); *Tacoma v. Welcker*, 65 Wn.2d 677, 684, 399 P.2d 330 (1965). We are also mindful that what constitutes public use depends on the particular facts in each case. *Miller v. Tacoma*, 61 Wn.2d 374, 384, 378 P.2d 464 (1963).

Petitioners contend that the property is not being condemned for a public use. The thrust of their argument is the port lacks authority to acquire property to construct air cargo facilities and, further, the possibility that such facilities may be leased makes the use a private one. We disagree.

■ The basic statutory powers of port districts are set forth in RCW Title 53. Section 53.04.010 provides:

> Port districts are hereby *authorized to be established* in the various counties of the state *for the purposes of acquisition*, construction, maintenance, *operation, development and regulation* within the district of . . . *air transfer and terminal facilities, or any combination of such transfer and terminal facilities, and other commercial transportation, transfer, handling, storage and terminal facilities, and industrial improvements.*

(Italics ours.) RCW 53.08.020 provides further:

> A port district may *construct, condemn,* purchase, *acquire, add to, maintain, conduct, and operate* . . . warehouses, storehouses . . . together with modern appliances and *buildings for the economical handling, packaging, storing, and transporting of freight* . . .

[1]Resolution No. 2372 provides: "BE IT FURTHER RESOLVED, that the acquisition of said property is for a public use and purpose, to-wit: to meet the present and the reasonably foreseeable future needs of the Seattle-Tacoma International Airport for use in the development and construction of air cargo, maintenance, hangar, air mail, buffer zone, water reservoir, roadway, taxiway and related airport facilities."

*air transfer and terminal facilities, and any combination of such transfer and terminal facilities, commercial transportation, transfer, handling, storage and terminal facilities* . . .

(Italics ours.)

RCW 53.08.010 gives port districts the power to

*acquire* . . . *by condemnation* . . . *all lands, property, property rights,* leases, or easements *necessary for its purposes* . . .

(Italics ours.)

In addition to the powers set out in RCW Title 53, RCW 14.07 and 14.08 grant port districts, as municipalities, other independent statutory powers. *In re Port of Seattle,* 72 Wn.2d 932, 935, 435 P.2d 991 (1967).

RCW 14.08.030 (1) authorizes a port to exercise the power of eminent domain to acquire property

for the purpose of *establishing, constructing, and enlarging airports* and other air navigation facilities and to acquire, establish, construct, *enlarge, improve, maintain, equip, operate, and regulate such airports* and other air navigation facilities and structures *and other property incidental to their operation* . . .

(Italics ours.) Petitioners contend that this section does not encompass storage and transfer facilities to be built for the use of commercial air freight forwarders.

The contention is not well taken. Such a construction of the term "airport" is manifestly at odds with the realities of modern airport operations. Testimony in this case indicates that air cargo traffic will soon surpass passenger traffic at Seattle-Tacoma International Airport. As defined in RCW 14.04.020 (3) "airport" includes:

appurtenant areas which are used, or intended for use, for airport buildings or *other airport facilities* . . .

(Italics ours.) The rapidly increasing volume of air cargo activity makes it both reasonable and realistic to include air cargo handling facilities within the meaning of the phrase "other airport facilities."

Additionally, we have stated previously that "an air

cargo terminal is an integral part of an airport such as Seattle-Tacoma International Airport." *In re Port of Seattle,* 66 Wn.2d 598, 599, 404 P.2d 25 (1965). Although petitioners attempt to distinguish the air cargo terminal in *In re Port of Seattle* from the air cargo storage and transfer facilities in the present case, it is a distinction without a difference. A terminal is where cargo is initially loaded onto or unloaded from a plane. Storage and transfer facilities are where cargo is stored and made ready for loading or shipping to its final destination. Both types of facility are necessary if air cargo is to be handled at an airport.

RCW Title 53 and RCW 14.07 and 14.08 manifest clear legislative intent to confer upon the port district the power to condemn land for the construction of air cargo storage and transfer facilities.

■ It is contended that these facilities may possibly, although not necessarily, be leased to private enterprise. It is urged that this destroys their characterization as a public use. The argument is unsound. The legislature has expressly authorized such leasing, RCW 53.08.080; RCW 14.08.120(4). As long as the object sought to be accomplished is for a public purpose, it is for the legislature to determine the means to accomplish it. *Miller v. Tacoma,* 61 Wn.2d 374, 387, 378 P.2d 464 (1963). The fact that private enterprise may be selected to effectuate the plan for providing air cargo facilities does not make the purpose of providing those facilities a private one. The subsequent lease of the facilities to private enterprise is incidental to the main public purpose.

In an analogous context, a challenge to the legality of a bond issue to construct a port terminal, we held that the mere leasing of such a facility to a private party does not destroy its public use character. *Paine v. Port of Seattle,* 70 Wash. 294, 318, 322, 126 P. 628, 127 P. 580 (1912); *see also Hutchinson v. Port of Benton,* 62 Wn.2d 451, 454, 383 P.2d 500 (1963). Although the precise issue before the court in *Paine* was whether the bond issue constituted a loan of

municipal credit to a private party, the following statement is relevant to our consideration here:

Perhaps if the sole purpose of acquiring the property was to lease it to an individual or corporation for private use, its acquisition and lease would be in violation of the constitutional provision cited. [Article 8, section 7.] But when the purpose is to establish public wharves or docks, and the lease is for a limited time, with power reserved to regulate wharfage charges, as it is in this instance, it cannot be said to be the acquisition of the property for a private purpose . . .

In the present case no leases have been entered into for the proposed facilities, but we are reasonably assured by the statutes authorizing the port to enter leases that conditions similar to those present in *Paine* will be present here. The leased property will serve a public purpose and will remain under the ultimate control of the condemning public agency.

Petitioners assert that *Hogue v. Port of Seattle,* 54 Wn.2d 799, 341 P.2d 171 (1959) prohibits leasing land acquired by condemnation to private users. However, in *Hogue* the critical issue was whether government could use the power of eminent domain to implement a plan to put property to a higher or better *private* economic use than that to which it was being devoted by its current *private* owner. The court emphasized, and the port admitted, that the proposed use was "private". An important factor in *Hogue* was the port's plan to sell the industrial sites being created to private parties. On those facts *Hogue* is distinguishable. Here, the construction of air cargo facilities is an integral part of an airport operation which serves a public purpose. *In re Port of Seattle,* 66 Wn.2d 598, 404 P.2d 25 (1965). By leasing the facilities, instead of selling them, the port will maintain the ultimate control to effectuate the public purpose for which petitioners' property is being condemned.[2]

---

[2]Further, the impact of *Hogue v. Port of Seattle,* 54 Wn.2d 799, 341 P.2d 171 (1959) was substantially modified by the adoption of article 8, section 8 (amendment 45) to the Washington Constitution which reads

The second issue raised by petitioners is whether the acquisition of their property is necessary to accomplish the port's declared purpose.

■■ A port's determination of *necessity* to condemn property, as distinguished from a determination of *public use*, is conclusive unless a challenger is able to prove actual or constructive fraud. *Tacoma v. Welcker,* 65 Wn.2d 677, 684, 399 P.2d 330 (1965). *Accord, In re Port of Seattle,* 72 Wn.2d 932, 936, 435 P.2d 991 (1967). The burden of proving either fraud or constructive fraud is on the objector. *Medical Lake v. Brown,* 63 Wn.2d 41, 45, 385 P.2d 387 (1963).

Petitioners do not allege *actual* fraud, but urge that the proposed use is a *constructive fraud* because: (1) the plans for the use of the property to be acquired are not specific; and, (2) petitioners' property is physically separated from the air cargo terminal thus making it unsuited for the proposed use.

To establish constructive fraud petitioners must show willful and unreasoned action without consideration and regard for facts or circumstances. *Tacoma v. Welcker, supra.* The record is absent of any such showing.

Unfortunately, petitioners have not clearly articulated their first ground. If they mean no specific use has been designated for their property, the position is incorrect. The record clearly establishes that the property is being acquired for air cargo facilities.

■ If petitioners mean there are no specific or detailed plans for the facilities to be constructed, we must reject it. The lack of specific plans and the uncertainty of the date on which the proposed use will commence are not supportive of a charge of constructive fraud. As we said in *Tacoma v. Welcker, supra* at 684, all that is required is reasonable necessity for use in a reasonable time. Furthermore, according to *Welcker* the word necessity

in pertinent part:

> The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion . . . shall be deemed a public use for a public purpose . . .

does not mean absolute, or indispensable, or immediate need, but rather its meaning is interwoven with the concept of public use . . . and embraces the right of the public to expect and demand the service and facilities to be provided by a proposed acquisition or improvement.

The record supports the view that the property being condemned for air cargo facilities will be devoted to that use in due course.

Petitioners' second ground for asserting constructive fraud is without merit. They contend that their property is separated from the present airport by a 4-lane limited access highway which makes it unsuitable for the port's declared purpose. However, they ignore the fact that an overhead bridge connects these parcels with the airport. The bridge provides ready access for the transportation of freight between the air terminal and the proposed storage and transfer facilities.

The trial court's finding of public use and necessity is approved and its order affirmed.

Petitioners raise two subsidiary issues: (1) that certain property owned by petitioner, Washington Cemetery Association, Inc., is exempt from condemnation; and (2) that the exercise of eminent domain in this instance constitutes spot zoning. However, they have failed to make assignments of error relevant to either issue. ROA I-43 requires that alleged errors must be specifically pointed out. Argument unsupported by an assignment of error does not present an issue for review. *Rutter v. Rutter,* 59 Wn.2d 781, 788, 370 P.2d 862 (1962).

■ Finally, petitioners' assignment of error No. 18, objecting to the trial court's admission of certain testimony, is not argued in their brief and is therefore waived. *Hutchinson v. Port of Benton,* 62 Wn.2d 451, 454, 383 P.2d 500 (1963).

The order is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and WRIGHT, JJ., concur.