[No. 2854-2.   Division Two.   February 22, 1978.]

THE PORT OF OLYMPIA, *Respondent*, v. DESCHUTES ANIMAL CLINIC, INC., ET AL, *Appellants*.

*Stephen Way* and *Don Miles,* for appellants.

*John S. Lynch* and *Daniel D. Syrdal,* for respondent.

REED, J.—Deschutes Animal Clinic, a Washington corporation, appeals from an amended order adjudicating public use and necessity entered by the trial judge in this eminent domain proceeding. The Clinic contends that the order is unlawful because (1) the Port, when acting to provide clear airspace, is limited to acquiring avigation easements and may not acquire land in fee, and (2) the Port failed to show that the taking of the land *in fee* was a matter of public necessity. We disagree and affirm the trial judge.

On April 16, 1975, the Port of Olympia Commission, operator of the Olympia Municipal Airport, adopted resolution No. 837, which authorized the acquisition of an avigation easement over property owned by the Clinic; pursuant to requirements of the Federal Aviation Authority (FAA), the Commission intended to acquire rights to airspace above the 32–foot level. The Clinic lies northeast of the Olympia Airport and is adjacent to the north end of the main runway.

Eminent domain proceedings were initiated on September 15, 1976; a hearing was held on October 25, 1976. The trial judge found that the Commission's declaration of necessity was based on sound reasons and was not arbitrary and capricious. An order adjudicating public use and necessity was entered.

On January 19, 1977, the Commission passed resolution No. 850. This resolution amended the terms of resolution No. 837 to provide for the taking of the east 150 feet of the Animal Clinic property in fee. The resolution stated the new action was in response to more stringent requirements of the FAA. An amended petition in condemnation was filed and a hearing was held.

At trial, Mr. William Flynn, the Port Engineer, explained that the new regulation, which mandates the acquisition of an avigation easement at the 17–foot level, was designed to insure that the view of the runway approach lights remained unobstructed. He also stated that there had been considerable correspondence between the FAA and the Port concerning the clearance problem and testified that he believed that noncompliance would cause the Port to lose certain federal contracts. Although testimony concerning the date the more stringent requirements were passed was conflicting, it is undisputed that such regulations were in effect at the time of the hearing. The regulations themselves, however, were not introduced into evidence.

In his oral opinion, the trial judge noted that a taking down to the 17–foot level would severely restrict the uses to which the property could be put. Although he felt the Port could have established a more complete record, the trial judge held the declaration of necessity concerning the taking of the east 150 feet was reasonable.[1] The amended order, granting the Port a fee interest in the east 150 feet of the Clinic's property and an avigation easement over that portion of the property lying between the east end of the

---

[1]The taking of the avigation easement was not raised in the second hearing, nor is it an issue on appeal.

airport's transition zone and western border of the 150-foot parcel, was entered on October 25, 1976.

■ The Clinic's contention that the Port is not authorized to acquire land in fee for the purpose of providing unobstructed airspace is without merit. Although RCW 14.08.030(3) does permit a municipality to obtain easements in the airspace,[2] it does not purport to be the exclusive means by which a municipality may acquire property necessary to insure "unobstructed airspace for the landing and taking off." Section 2 of the same statute states:

> Property needed by a municipality for an airport or restricted landing area, or for the enlargement of either, or *for other airport purposes,* may be acquired by purchase, gift, devise, lease or other means . . . and otherwise *by condemnation in the manner provided by the law under which such municipality is authorized to acquire like property for public purposes, full power to exercise the right of eminent domain for such purposes being hereby granted . . .*

(Italics ours.)

Clearly, the acquisition of property for the purpose of increasing the safety of the airport by providing an unobstructed view of the approach lights is a proper airport purpose. The acquisition of the east 150 feet by the Port of Olympia is not an improper attempt to exercise the power of eminent domain in excess of statutory delegation. *See Des Moines v. Hemenway,* 73 Wn.2d 130, 437 P.2d 171 (1968).

■ The Animal Clinic's attack on the finding of public necessity is two-pronged. First, the Clinic argues that RCW 14.08.030(1) requires that the government entity make "investigations, surveys, and plans" before attempting to acquire any property. We do not agree; the authority to make such investigations is merely one of three broad powers granted to municipalities in the first sentence of RCW 14.08.030(1). There is no requirement that determinations of public use or necessity be based on such investigations.

---

[2] A port authority is considered to be a municipality for the purposes of RCW 14.08. RCW 14.08.010.

In any case, it appears that the Port did undertake to survey the area; at least three different maps were placed into evidence by the Port Commission. Although the record could be more explicit, it does appear that the FAA regulations that were relied on by the Commission were the result of a nation–wide study of airport safety requirements.

In addition, the Clinic contends the Port's decision that it had become necessary to acquire the east 150 feet in fee amounted to constructive fraud. The rule that a declaration of public necessity is conclusive unless the challenger is able to show actual or constructive fraud has been stated often. *State v. Brannan*, 85 Wn.2d 64, 530 P.2d 322 (1975); *In re Port of Seattle*, 80 Wn.2d 392, 495 P.2d 327 (1972); *In re Port of Seattle*, 72 Wn.2d 932, 435 P.2d 991 (1967); *Tacoma v. Welcker*, 65 Wn.2d 677, 399 P.2d 330 (1965). However, we believe that the term constructive fraud is misleading in this context. Our courts, in actuality, review the declaration under the arbitrary and capricious standard, and we see no merit in applying a different label to that well–known test. *Seattle v. Loutsis Inv. Co.*, 16 Wn. App. 158, 554 P.2d 379 (1976).

In *In re Port of Seattle, supra* at 398, the court stated: "To establish constructive fraud petitioners must show willful and unreasoned action without consideration and regard for facts or circumstances." This language is simply a paraphrase of the test generally applied by a reviewing court when examining a record for arbitrary and capricious action. *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955). The Port Commission's declaration of public necessity will be set aside only if the Clinic is able to meet its burden of showing actual fraud or arbitrary and capricious action on the part of the Clinic. *In re Port of Seattle*, 80 Wn.2d 392, 495 P.2d 327 (1972); *Medical Lake v. Brown*, 63 Wn.2d 41, 385 P.2d 387 (1963).

The Clinic does not argue that the declaration of necessity was procured through actual fraud, and there certainly is no indication of such conduct in the record. In addition,

our review of this case leads us to conclude that the Commission's determination that it was necessary to acquire the east 150 feet in fee was not arbitrary and capricious. It had become necessary for the Commission to acquire rights down to the 17-foot level and we are convinced that the taking in fee was not an unreasonable extension of this requirement. The Commission relied on surveys and maps in determining how much land was needed in fee; it does not appear that excess acreage was condemned. The Clinic has failed to convince us that the Port Commission's declaration of necessity was a result of arbitrary and capricious action and, therefore, we will uphold the Commission's determination.

The decision of the trial court is affirmed.

PEARSON, C.J., and SOULE, J., concur.